[Crim. No. 1515. Second Appellate District, Division One.—December 21, 1927.]

THE PEOPLE, Respondent, v. JOHN SPRAIC, Appellant.

L. E. Dadmun and C. L. Welch for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

SHAW, J., *pro tem.*—Defendant was tried on an information charging him in two counts with murder of Homer E. Ranes and Mildred Ranes, who were husband and wife, and was convicted of manslaughter on each count. He appeals from the judgment and "from the verdict." ▮ The law authorizes no appeal from a verdict, and hence the latter appeal is nugatory, but all the points made may be considered on the appeal from the judgment.

▮ Appellant's first point relates to the procedure on the impanelment of the jury. When the first twelve prospective jurors were seated in the box defendant questioned them as to their possession of the general qualifications of jurors, or in other words, as to the existence of any ground of challenge under section 1072 of the Penal Code, and passed them. He then claimed that before he was required to examine them further with a view to making any challenge for cause under section 1073, the People should examine them for general qualifications and make any challenge they desired under section 1072. The court ruled against this contention and required defendant to exercise all his challenges for cause before the talesmen were submitted to the prosecution for examination. Section 1067 of the Penal Code, on which appellant seems to rely, merely divides challenges into classes—peremptory and for cause. Neither that section nor section 1087, which specifies the order in which each party shall exercise his challenges for cause, has any bearing upon the order of the parties *inter se.* That matter is covered by section 1086 of the Penal Code,

as follows: "All challenges to an individual juror, except peremptory, must be taken, first by the defendant, and then by the people, and each party must exhaust all his challenges before the other begins." This means that the defendant shall exhaust all of his challenges other than peremptory challenges before the prosecution are required to begin. The ruling complained of was clearly right.

Defendant further complains of the rulings of the court sustaining objections to questions which he put to two prospective jurors who were later sworn on the jury after his peremptory challenges had been exhausted. The questions put to these two jurors were substantially alike, one of them being as follows: "Q. If the court would instruct you that an insane person is incapable of committing a crime as a matter of law, would you have any hesitancy in following that instruction?" Replying to other questions, each of these jurors stated in substance that he had no prejudice against insanity as a defense, and that he would follow the instructions of the court as to the law, even though he should not agree with the court as to what the law ought to be. This was sufficient to show that the jurors were in an unbiased frame of mind so far as the defense of insanity was concerned, and defendant was not entitled to examine them in greater detail as to suggested instructions.

The defendant's principal defense at the trial was insanity, and he now complains of the refusal of the court to grant his motion for the appointment of expert witnesses under the provisions of section 1871 of the Code of Civil Procedure (Stats. 1925, p. 305), to examine him as to his sanity. This motion was made more than two months before the trial, and was not then ruled on. Three days before the trial, on stipulation of both sides, the court did appoint two experts to examine the defendant as to his sanity, and they both testified at the trial. There is nothing in the record to show that the defendant suffered any prejudice by reason of the delay in making these appointments, and in the absence thereof he cannot complain of the action of the court, even if section 1871 confers any rights at all on the parties to an action—a question which we do not decide.

There was no error in admitting in evidence photographs of the two slain persons as they lay on the floor where they were first discovered. These photographs were

referred to by some of the witnesses and used to explain their testimony as to the position of the bodies, and were hence admissible, even though they had a gruesome appearance. (*People* v. *Saenz*, 50 Cal. App. 382 [195 Pac. 442].)

■ Defendant complains of the refusal of the trial court to give the following instruction asked by him: "If you find by preponderance of testimony that the defendant at the time of the homicide was deprived of his reason, and you further find that he was deprived of his reason by the acts, statements and conducts of the deceaseds, and that while defendant was so deprived of his reason he thought he was acting in self-defense, and according to his lights he was acting in self-defense, though those lights be supplied by a vacant mind were dim and unsatisfactory, yet they were all the defendant had at the time, and defendant, under those conditions, acted on the facts as they appeared to him and he, the defendant, had an honest belief that he was in danger of his life or immediate bodily harm at the hands of the deceaseds, then killed the deceased, he could not be found guilty as charged in the information, and it will be your duty to find defendant not guilty." The jury was fully instructed as to the law concerning insanity as a defense. This instruction mingles the doctrines relating to insanity and self-defense, and declares in substance that one may justify a homicide as in self-defense on such a view of the circumstances as would be taken by a man without reason, whereas the true rule is that one who attempts to shield himself behind the doctrine of apparent necessity can do so only if the necessity would have been apparent to a reasonable man under all the circumstances of the case as known to the slayer. (Pen. Code, sec. 198.) It was therefore properly refused.

■ At the trial it was proved that defendant shot and killed Mr. and Mrs. Ranes at the time alleged in the information, the shooting of the two being almost simultaneous, and this was admitted by him at the time of his arrest and in his testimony at the trial. There was, however, no eyewitness of the fatal encounter other than defendant himself, and no testimony was given in behalf of the prosecution as to the circumstances thereof. Mr. Ranes and Mrs. Ranes lived directly across the street from defendant, and were accustomed to address to him opprobrious epithets comment-

ing on his foreign nationality. There was testimony that they also made threats to him that they would drive him out of the community, and that they interfered with his property, business, and affairs, causing him financial loss. In his defense defendant offered evidence to show that each of the persons killed had at various times made threats to kill or shoot defendant, none of which were made in the presence of or communicated to the defendant. This evidence was objected to on the ground that the threats were not communicated to the defendant, and also that no evidence had been given tending to show that the killing was done in self-defense, and hence no proper foundation had been laid. The court excluded the testimony thus offered, and defendant now complains of the ruling.

In a homicide case where self-defense is in issue, and the evidence is conflicting, or leaves a doubt as to which party was the aggressor in the affray, evidence of previous threats made by the deceased against the defendant but not communicated to the latter is admissible as tending to establish the fact that the deceased put his threats into execution and began the affray. But to make evidence of such threats admissible there must be some evidence tending to show that the deceased was the aggressor.

In *People* v. *Thomson,* 92 Cal. 506, 511 [28 Pac. 589, 590], the court said: "Again, in this case a deadly encounter took place; one party was killed; the survivor insists that the killing was done in self-defense, and that the deceased made the first attack. Who was the aggressor was an issue of vital importance to the jury; justice could only be reached by its proper solution, and, as disclosed by the evidence, it was enveloped in doubt. Under these circumstances, all the acts and conduct of the deceased, either in the nature of overt acts of hostility, or threats communicated or uncommunicated, were proper evidence to be considered by the jury as shedding light—to some extent, at least—upon the issue as to whether the deceased or the defendant was the aggressor in this fatal affray."

There are other authorities to the same effect, but they all condition the admissibility of such evidence upon the fact that the evidence is otherwise equivocal as to whether the deceased was the aggressor. (*People* v. *Arnold,* 15 Cal.

476; *People* v. *Scoggins*, 37 Cal. 676; *People* v. *Lamar*, 148 Cal. 564 [83 Pac. 993].)

In *People* v. *Gonzales*, 33 Cal. App. 340 [164 Pac. 1131], the court sustained an order striking out evidence produced by the defendant of previous threats by the deceased against defendant, some of which appear to have been uncommunicated, and said: ''When this evidence was tendered there was no testimony whatsoever to show any act of aggression committed by deceased at the time of the homicide indicating that he intended to attack defendant. Since there was neither claim nor proof of a hostile demonstration by deceased at the time of the homicide, the fact that he had theretofore made threats against defendant, could not justify the latter in killing him.''

In the case at bar there was, when defendant's offer was made, no evidence at all of the circumstances of the homicides, and hence nothing on which to base a claim of self-defense. The evidence of the abusive conduct of the Ranes toward defendant could not serve that purpose. In this condition of the record the burden was on the defendant to prove circumstances of justification or excuse, at least to the extent of raising a reasonable doubt in the minds of the jury on that point. One of the grounds of the objection to defendant's offer was that no showing of this kind had been made, and the objection was properly sustained on this ground. When the objection was made, defendant's counsel declared that he expected to show later by defendant's testimony that he acted in self-defense. In this respect the case differs from *People* v. *Gonzales*, *supra*, where, on motion to strike, defendant failed to make such an offer of proof, but we do not think this difference calls for a different decision. The order of proof rests largely in the discretion of the trial court, and we cannot say that its discretion was abused in this matter. It might well have concluded that if the proposed evidence of threats were admitted and then defendant failed to supply the promised evidence, it would be difficult for the jury to eradicate from their minds the evidence of such threats.

Furthermore, the event justified the action of the court, for when the defendant took the stand he testified to no acts on the part of either of the slain persons at the time of the killing which could reasonably be construed as a hostile

demonstration against him, or give rise to an application of the rules of law relating to self-defense. He testified in substance that just before the homicides he met Mr. Ranes on the street coming from the store with a package in his hand and entered into a conversation with him for the purpose of trying to get Ranes to leave defendant alone once more; that Ranes denied doing anything to defendant or bothering him and said: "Let us go and see my wife and talk with her"; that they both started toward Ranes' house and just as Ranes came off of the sidewalk he said: "he was going to get me out of there"; that when they were on the porch Ranes went into the house, leaving defendant outside, slammed the screen door in his face, called him an unpleasant name and said, "stay out," and "the next thing I heard the shots. I don't know how I fired them." On cross-examination defendant said that Ranes was shaking and angry at the time they met on the street, and then "acted like he was going to show me that he was going to be friends"; that as Ranes shut the screen door "he started to act like he was going to grab something and said he was going to get me at that time"; and that he was trying to close the screen door when the shots were fired. The defendant in his testimony made no mention whatever of Mrs. Ranes or of any action on her part at the time of the shooting. The defendant could not reasonably have believed from these circumstances that he was in imminent danger of great bodily injury or of the commission of a felony at the hands of either of the Ranes, or that such danger could be averted only by killing them or either of them.

Another ruling complained of was the court's refusal to give this instruction: "If, after listening to all the evidence introduced, and instructions of this court, you should find that the defendant at the time he is charged with the commission of the crime, as alleged in the information, was so affected with disease of mind as thereby to have lost the power to choose between right and wrong, and committed the act charged in the information without being conscious thereof, and did not possess will power sufficient to control the impulses arising from his mental derangement and thereby avoid doing the act, it will be your duty to find the defendant not guilty." Taking this instruction as a whole it is erroneous, because it includes a statement

that an irresistible impulse would be a defense, which is not the law. (*People* v. *Morisawa*, 180 Cal. 148 [179 Pac. 888].) Defendant claims that this instruction embodies the rule established by subdivision 5 of section 26 of the Penal Code, that persons who committed the act charged without being conscious thereof are incapable of committing crimes. There was no evidence that defendant was unconscious of what he was doing, and the argument in support of this instruction is merely that he was unconscious of the moral nature of the act he was committing. If it can be so construed it was fully covered by other instructions given on the subject of insanity.

The court gave the jury the following instruction: "The court has given you instructions embodying such rules of law as may be necessary to assist you in arriving at a verdict. As to some of these instructions, their application depends upon the light in which you view the evidence.

"The fact that the court has given you instructions as to particular rules of law must not be taken by you as an indication that such rules are necessarily applicable to the cause on trial, or as indicating that the court considers them necessarily applicable. Where there is a conflict of evidence, the question as to whether a particular rule of law is applicable depends frequently and solely upon the conclusion as to what the facts are, and the jury are the sole judges of the facts.

"If any instruction is applicable only if a particular situation or state of facts exists, and if you find that no such situation or state of facts exists, then you should not take such instructions into consideration in your deliberations."

Defendant complains of this instruction and discusses it at considerable length, his grounds of attack being that thereby the court abdicated its function of declaring the law, repudiated all its other instructions and left the jury to determine for themselves what constituted the law applicable to the case. We do not think the instruction is open to the criticisms thus directed at it by the defendant. It is the duty of a trial court to give instructions on proper request therefor as to the law applicable to any state of facts that may be logically deducible from any of the evidence, regard-

less of the weight or credibility of that evidence, which are within the sole province of the jury; and this duty the court performed in this case. But when the jury, in the exercise of their function of passing on the evidence, reject the evidence tending to prove a fact and conclude that the fact does not exist, there is no longer any occasion for them to consider or apply to the case any instruction as to the legal effect of the existence of that fact. The instruction complained of did no more than inform them of this obvious rule and the giving of it, although possibly superfluous, was not error.

No other points are made for reversal, and as we find no error the judgment is affirmed. The appeal from the verdict is dismissed.

Conrey, P. J., and Houser, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 16, 1928.

All the Justices concurred.