[Crim. No. 573. Fourth Dist. May 15, 1946.]

THE PEOPLE, Respondent, v. SAMUEL CHENAULT, Jr., Appellant.

488

John Said for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, and Robert M. Wash, Deputy District Attorney, for Respondent.

GRIFFIN, J.—Defendant Samuel Chenault, Jr. (colored, aged 26) was charged with and convicted by a jury of entering the Singer Grocery Store in Fresno with intent to commit theft therein. A motion for new trial was denied. At the trial it was stipulated and established that the grocery store in question was burglarized sometime between 7 p. m. of November 21, and 10 a. m. of November 22, 1945, by a breaking of the rear door and that rolls of pennies, nickels and dimes, together with certain groceries, cigarettes, a radio, and ladies' wearing apparel were taken. The store proprietor identified articles of groceries received in evidence by the retail prices which he had written thereon.

Defendant came to Fresno from Los Angeles on Sunday evening, November 18, and claims that he was en route to San Francisco to see a sick cousin or uncle, but stopped over to see two lady friends. Sunday evening he saw a ''Room for Rent'' sign in a window, rented the room, and paid $7.50 for the first week.

According to the testimony of the proprietor (a Mr. Phillips, also colored and about 64 years of age) defendant brought with him a woman who was supposed to be his wife, and a man whom defendant said was his brother. He testified that the claimed wife stayed there with him Sunday and Monday nights and the brother stayed with him on Tuesday night; that on Wednesday night, November 21, the day before Thanksgiving, at about 11 o'clock, defendant and the brother came to the house together and made two or three trips into the kitchen with packages and bundles under their arms; that the brother left and defendant retired; that defendant occupied a rear bedroom and had kitchen privileges; that in order to get to the kitchen defendant had to go through the proprietor's room where he slept; that after defendant went to bed he, the proprietor, got up and went to the kitchen and saw a lot of groceries in a big box; that the next morning defendant took the groceries out of the box and stacked them on three separate shelves in the kitchen; that the ice box was also filled with food; that on Thursday morning, Thanksgiving day, while Phillips was preparing for church, defendant attempted to hook up a black radio to Mr. Phillips aerial; that he told defendant there was no need of two radios; that defendant said he would sell his radio then; that on that same morning defendant told Phillips ''that he was a good

man," and that he would pay him some more money on his room rent; that defendant then gave him $7.50 for another week's rent; that the money consisted of a roll of 50 dimes. and some 50 cent pieces; that he became suspicious of defendant because he had missed a vibrator out of the top drawer of his dresser; that he called the police department at about 6 p. m. on Thanksgiving day; that an officer arrived and that he told him about missing the vibrator and showed him the groceries and $5.00 in dimes; that the officer got defendant out of bed and sent him to headquarters.

The officer testified that he questioned the defendant about the burglary of the Singer store and that at first defendant denied ever seeing the groceries but immediately thereafter stated that he had bought them from a man in Chinatown two or three days previously. Later, another officer interviewed defendant and defendant told him that when he was about 35 miles from Fresno, a white man, whom he did not know, sold him the groceries for $5.00 and took him and the groceries to the Phillips home. Defendant denied any knowledge of the burglary, about the radio, the ladies' clothing or the fresh meat found in the ice box. A search of defendant's room revealed a radio hidden under the bed, which radio was taken from the Singer store, and a box of ladies' clothing which was also taken from the same store. Finger prints found on a partly empty beer bottle in the same store were examined but there were found to be no clear prints, only "smudge spots."

Defendant took the stand and testified that when he arrived in Fresno on the morning of November 18, he went to the house of "Iola" and "Jennie"; that he did not know their last names; that he wanted to get a room; that he was going to San Francisco to see a sick cousin; that he would be back in about a week or ten days; that that afternoon he went to San Francisco in a car driven by a colored boy named "George"; that he did not know his last name; that when he arrived in San Francisco his cousin was dead; that he attended the funeral on Tuesday, November 20, but did not know just exactly where it was held; that he stayed one night in a hotel in San Francisco but did not remember the name of it; that he then went to Oakland and left for Fresno on Thanksgiving day, November 22d, about 1:30 or 2 o'clock in the morning with "George"; that he arrived in Fresno about 10 a. m., saw Iola and Jennie on the street and then

went to his room and saw Phillips and other people there having a "jamboree"; that Phillips made improper advances to him and threatened to get even with him; that about 30 minutes later the police came and accused him of burglary which he denied; that he had never seen the groceries until he arrived home and that the radio was being played by guests in the house; that he never talked to the police officers although they tried to get him to talk and admit the burglary; that he never slept in the room except the hour or two just before he was arrested on November 22d. Defendant first denied that he had ever been convicted of a felony but later, after considerable cross-examination, admitted a prior conviction of robbery in the second degree and that he was granted five years probation. In rebuttal, the police officer testified that defendant never told him anything about being in San Francisco at the time of the alleged robbery. Mr. Phillips denied that any party was going on at his home on Thanksgiving day and said that defendant's story was "the biggest story ever told"; that when Officer Baker came to the home defendant was in bed with one Mary Allen and that when the officer questioned the defendant about the vibrator defendant said "he did not give a ———— if they put him in the penitentiary."

It is first claimed that prejudicial error was committed in the cross-examination of the defendant in respect to the prior conviction of a felony. A portion of the cross-examination on this subject is as follows:

"Q. (By Mr. Wash): By the way, have you ever been convicted of a felony? A. No. Q. Isn't it a fact, Mr. Chenault, that on May 28, 1942, you were found guilty of second degree robbery in the Superior Court of the County of Los Angeles? A. Beg pardon? Mr. SAID: Just one moment, please. We object to that question, Your Honor, as already been asked and answered. The only question that he can ask this witness is whether or not he has been convicted of a felony and the answer has already been given. Counsel knows he cannot go any farther than that. He wishes to leave an impression with this jury that this man has been convicted of something that he was not convicted of, and I assign that as prejudicial misconduct." The objection was overruled. ". . . A. Well, I have never been convicted nowhere of a felony. Mr. WASH: Q. Isn't it a fact that on May 28, 1942, you were found guilty

of robbery in the second degree? A. No. . . . MR. WASH:
Q. Isn't it a fact that you were granted probation for five
years in that case? A. No.'' Objection to the question was
overruled and it was assigned as prejudicial misconduct.
''. . . MR. SAID: May we take a recess to look up the law?
. . . MR. WASH: Q. Isn't it a fact, as a result of the second
degree conviction of robbery, you were granted five years
probation with the first year in the county jail? A. No. . . .
MR. WASH: You still say no, it is not a fact while serving
the jail term, a portion of that probation, you escaped from
jail? A. No.'' Objection thereto was made. ''THE COURT:
That objection, on the basis of information furnished the
court by the district attorney, must be sustained, the question
relative to escape. . . . MR. WASH: I am not alleging escape.
Even if so, it would not be a felony, Your Honor. It is simply
to prove he was incarcerated as part of it. . . . THE COURT:
The jury will understand that the last question should not
be given any consideration by the jury whatever. Wipe that
from your minds entirely, the question of escape. MR. SAID:
And let the record also show, Your Honor, that counsel has
been purporting to read from some notes that he has on his
desk. I assign that as prejudicial misconduct, and within a
distance of four or five feet of the nearest juror. THE
COURT: Mr. Said, in your presence I saw that telegram, and
I can see nothing that the District Attorney should be
accused of prejudicial misconduct. You and the District At-
torney and the court all read that telegram together, and
that is what he is reading. If there has been a mistake here,
then there is a mistrial.'' A motion for mistrial on that basis
was denied.

Several pages of transcript were consumed in this line of
examination and over objections. Later, the defendant was
recalled by the court as a witness. The trial judge further
questioned the defendant, over his counsel's objections. It
was in part as follows:

''(BY THE COURT). You understand what the word 'pro-
bation' means? A. No. Q. Have you ever been on probation?
A. Yes, I been on probation. Q. Then you understand what
would be meant by it, don't you? A. Well, it is not a felony,
is it? Q. Well, you answer it. I am not asking you about
anything except the charge of robbery the District Attorney
asked you about yesterday. A. Yes, sir, I understand. Q. Not
referring to anything else at all. He asked you whether or

not you had been convicted of a felony, and you answered that you had not; then he asked you whether or not you had not, on a certain date, been convicted of second degree robbery in the County of Los Angeles, and you answered that you had not. However, the court wanted there to be no misunderstanding about your answers, because of course if you answered a question like that untruthfully with full knowledge of what your answer meant and what the question was, then naturally you would be guilty of perjury, because you are under oath. Now, I want to be sure that you understood clearly what the question meant. Now, the word 'conviction' includes a plea of guilty. In other words, if you had pleaded guilty or were tried before a jury, it is the same thing; and if you pleaded guilty to second-degree robbery and were granted probation, the situation is still such that you have been convicted of a felony. A. Oh, I see. Q. You understand? A. Yes, sir. . . . Q. Now, with that explanation in mind—does that change your answer in any way? A. Well, I have been convicted of second degree robbery, yes, sir. Q. I see. A. But I did not plead guilty. I was found . . . guilty . . . by the court (and) . . . granted probation . . . for five years. . . . THE COURT: All right, I think that clears the whole matter up."

Thereafter, a motion for mistrial was denied. The defendant again argues that the court prejudiced the defendant in the eyes of the jury, gave him a veiled warning about committing perjury, and contends that the prosecutor had no right to cross-examine the defendant on the details of the claimed prior conviction after he had denied it; that the only proper procedure was to produce a certified copy of the alleged conviction, citing 70 Corpus Juris 894, section 1097; 27 California Jurisprudence, page 142, section 118; *People* v. *Chin Hane,* 108 Cal. 597, 606 [41 P. 697]; *People* v. *David,* 12 Cal.2d 639, 646 [86 P.2d 811]; *People* v. *Pagni,* 69 Cal. App. 94 [230 P. 1001]; *People* v. *Boggess,* 194 Cal. 212 [228 P. 448].

Section 2051 of the Code of Civil Procedure provides that a witness may be impeached by showing that he has been convicted of a felony either by an examination of the witness or production of the record of the judgment. A witness must answer as to his previous conviction of a felony. (Code Civ. Proc., § 2065.) Where a witness denies the previous convic-

tion, it is the usual and proper practice to produce a copy of the judgment of conviction. (27 Cal. Jur. § 118, p. 143.) Where the defendant admits the prior felony conviction it has been held that the witness might be asked the name or nature of the particular felony and might be questioned with respect to the judgment. (*People* v. *Rodrigo,* 69 Cal. 601 [11 P. 481].)

In *People* v. *Chin Hane, supra,* and *People* v. *David, supra,* it is said: "Beyond this the examination should not go," and "details and circumstances comprising the prior offenses are not admissible."

In *Johns* v. *State,* 88 Neb. 145 [129 N. W. 247], where the statute involved was similar to ours, it was held that if the defendant testifies in his own behalf the county attorney may, on cross-examination, ask him whether he has been convicted of a felony, and, if the witness equivocates in his answer, the prosecutor, in good faith, may ask such additional questions as may be reasonably necessary to bring out the fact of that conviction.

The same question was presented in *Denker* v. *State,* 106 Neb. 779 [184 N. W. 945]. There the defendant appeared as a witness for himself. It was held that he subjected himself to the same rules of cross-examination as any other witness to test or attack his credibility. The defendant denied prior conviction of a felony. The county attorney further cross-examined him and brought out the admission of a prior conviction and that he was sentenced to the penitentiary. This was held not to be prejudicial error.

On the other hand, it has been held that an attempt on the part of the prosecution unduly to influence the jury by repeated and persistent questions to the accused as to his having been previously convicted of crime, where he denies such convictions and no competent evidence of any former conviction is introduced, is such a departure from legal methods and so prejudicial to the rights of accused as to call for a reversal of a judgment of conviction. (*People* v. *Elliott,* 104 Cal.App. 107 [285 P. 401] ; 70 C.J. § 1097, p. 888.)

The attorney general, in his brief, rightfully concedes that the prosecutor "probably did overstep the bounds of legal propriety" in asking the defendant: "You still say no, it is not a fact while serving a jail term, a portion of that probation, you escaped from jail?" Even though the trial court did sustain the objection thereto and instructed the

jury to disregard the question of escape, the suggestion of such fact, under the circumstances here described, should not be condoned, and the continual reiteration of such questions and the overruling of objections bearing on such questions, it seems to us, went beyond the rule which allows a witness to be cross-examined on the question as to whether or not he has been convicted of a felony. The trial judge and prosecutor, no doubt, were acting in good faith in endeavoring to elicit the truth from the defendant in respect to the prior conviction and to clarify the misapprehension on the defendant's part as to the law in respect thereto. A trial judge may fairly and by proper questions seek to clarify a fact or to elicit the truth from a witness even in a criminal case, but where such cross-examination is of unusual length on a matter not competent or material to the issues, which has a tendency to prejudice the defendant in the eyes of the jury, courts condemn such procedure. (*Hughes* v. *Quackenbush*, 1 Cal.App.2d 349, 359 [37 P.2d 99].)

As the judgment in this case must be reversed on other grounds, on a retrial of the action the complaint here made that the bounds of cross-examination were overstepped will, no doubt, be avoided.

Defendant produced Iola Clayton as a witness in his behalf, who testified that she had known the defendant for more than three months; that she saw him on Sunday morning, November 18th, in Fresno, and had a conversation with him; that he said to her that "he was just coming from Los Angeles and he was on his way to San Francisco." The prosecution moved to strike the answer as to what the defendant said to this witness. The motion was granted. Thereafter, counsel for the defendant asked the witness whether or not defendant said anything to her about going to San Francisco. The witness replied: "Yes, sir, he did." She was then asked the substance of the conversation. Objection was made and sustained. A similar question was propounded to her as to whether or not she saw the defendant on Thanksgiving day in Fresno and whether Mr. Chenault told her where he had been during the past three or four days. Objection to this question was sustained. An offer of proof was made that Chenault told her he was going to San Francisco to see his sick cousin and the offer was rejected. The witness was further asked whether or not she saw defendant at any

time between Sunday afternoon and Thanskgiving day. Objection was made to this question and was sustained.

It is now urged that the trial court committed prejudicial error in sustaining the objections to the questions propounded, citing *People* v. *Fong Sing*, 38 Cal.App. 253 [175 P. 911]; *People* v. *Silver*, 16 Cal.2d 714 [108 P.2d 4]; *People* v. *Alcalde*, 24 Cal.2d 177 [148 P.2d 627]; *People* v. *Weatherford*, 27 Cal.2d 401 [164 P.2d 753].

*People* v. *Fong Sing*, *supra*, was a murder case in which the defense was an alibi. Defendant claimed that he was not present at the scene of the homicide. He claimed that he was, at that time, on the premises of a Stockton lumber company. In support of his alibi he offered to prove by a third person that he had stated to him immediately preceding his departure that he was going to a certain lumber yard several blocks from where the deceased was slain. The trial court rejected this line of evidence on the ground that it was hearsay. The Supreme Court held such ruling to be erroneous and cited Mr. Greenleaf on "Law of Evidence" where it is said that "When a person . . . leaves his house . . . his declarations, made at the time of the transaction, and expressive of its character, motive or object, are regarded as verbal acts, indicating a present purpose and intention, and are, therefore, admitted in proof like other material facts." This is an exception to the hearsay rule. This case was cited in *People* v. *Silver*, 16 Cal.2d 714 [108 P.2d 4]; and *People* v. *Alcalde*, 24 Cal.2d 177 [148 P.2d 627]. (See, also, *People* v. *Weatherford*, *supra*.) Under the authorities cited, the court erred in its rulings. The proffered testimony was an exception to the hearsay rule.

The evidence against defendant was entirely circumstantial. ▪ It is now claimed that it was prejudicial error to refuse to instruct, in substance, that when circumstantial evidence is relied upon it must be irreconcilable with the theory of innocence. In this connection the defendant offered, but the court refused, to give the following instruction:

"Where a conviction for a criminal offense is sought upon circumstantial evidence alone, the people must not only show, by a preponderance of the evidence and beyond a reasonable doubt, that the alleged facts and circumstances are true, but they must be such facts and circumstances as are absolutely incompatible upon any reasonable hypothesis other than that of the guilt of the accused."

And "If the facts, no matter how strong, can be reconciled with the theory that another may have committed the crime, the defendant should be acquitted."

The court did give the following instruction offered on behalf of the People:

"You are further instructed that circumstantial evidence is legal and competent in criminal cases; and if it is of such a character as to exclude every reasonable hypothesis other than that the defendant is guilty, it is entitled to the same weight as direct testimony.

"And if you believe from the evidence beyond a reasonable doubt, that the defendant committed the crime as charged in the information, it matters not that such evidence, or a portion of it, is circumstantial, provided you believe from the evidence that such facts and circumstances pointing to the guilt of the defendant have been proved beyond a reasonable doubt, and are of such a character as to exclude every reasonable hypothesis except that the defendant is guilty."

The instruction, as given, bore upon the question, but did not fully and entirely embody the rule that, to justify a conviction, the circumstances must not only be consistent with the theory of guilt, but must be inconsistent with any other rational conclusion. Where the evidence is purely circumstantial, the defendant is entitled to an *adequate* instruction embodying such rule. (*People* v. *Hatchett,* 63 Cal.App. 2d 144 [146 P.2d 469].) And it has been said that the defendant, upon request, is entitled to a special instruction thereon. (*People* v. *McClain,* 115 Cal.App. 505 [1 P.2d 1085].)

In *People* v. *Bender,* 27 Cal.2d 164 [163 P.2d 8], the Supreme Court held that in every criminal case wherein circumstantial evidence is received, the trial court should, on its own motion, give an instruction that, to justify a conviction, the facts or circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion. In that case it was held that the instruction given on the subject was proper as far as it went but that there should have been added a direct statement of the precise principle under discussion, and held that the failure to give a complete instruction on the subject, although error, was not ground for a reversal. It therefore must be held here that the failure of the trial court to give an adequate instruction on that subject was error.

It is next argued that the court committed reversible error in refusing to give the following instruction:

"I instruct you that if, after considering all the evidence in this case, you have a reasonable doubt as to the presence of the defendant near the scene of the alleged crime, then you should acquit the defendant."

The main and only defense of the defendant in the instant case was that he was in San Francisco at the time of the alleged offense. He had the right to have the jury instructed on the issue. The court, in refusing this instruction, made a notation: "Not good law . . . could have aided and abetted without being present." The trial court should refuse to give an instruction as to any theory which is not supported by the evidence, but a defendant is entitled to an instruction based upon the theory of his defense, provided such instruction correctly states the law and the defense is supported by evidence. (*People* v. *Gallagher*, 107 Cal.App. 425 [290 P. 504].) It has been held to be reversible error for the court to refuse to give the jury an instruction on alibi. (*People* v. *Garrett*, 93 Cal.App. 77 [268 P. 1071].)

While it is true that this instruction did not contain the element respecting accomplices, an instruction on that subject was given informing the jury that if they believed from the evidence beyond a reasonable doubt that a burglary was committed as charged and that the defendant committed the same by entering the building mentioned or by standing by, aiding and abetting, assisting or encouraging the commission of the crime, then it was the duty of the jury to find the defendant guilty as charged. The court should have given an instruction dealing with that issue. (*People* v. *Wong Loung*, 159 Cal. 520 [114 P. 829] ; *People* v. *Garrett, supra; People* v. *Wilson,* 100 Cal.App. 428 [280 P. 137] ; *People* v. *Spraic,* 87 Cal.App. 724 [262 P. 795].)

It is next argued that the trial court committed prejudicial error in giving two instructions offered by the People which in effect charged the jury on questions of fact and invaded their province. ■ The People offered this instruction:

"The court further instructs you that though the intent to commit theft within the said building *at the time the defendant entered therein* (Italics ours) is an essential element of the offense of burglary, the existence of such intention may be and usually must be inferred from the circumstances and conduct of the person making the entry.

"The commission of an offense is strong, but not conclusive evidence that the entry was for that reason; . . ."

This instruction was marked "Not applicable under tes-

timony here," but was inadvertently placed in the file and was read to the jury as above quoted. The portion of the foregoing instruction which we have italicized does assume a vital issue of fact. Defendant's whole defense was that he never entered the store. The instruction, as given by the court, assumes that the defendant entered therein, and in fact told the jury so. The error is manifest. (*People* v. *Messersmith*, 61 Cal. 246; *People* v. *Matthai*, 135 Cal. 442 [67 P. 694]; *People* v. *Kinowaki*, 39 Cal.App.2d 376, 381 [103 P.2d 203].)

▮ The second instruction complained of recites:

"You are instructed that inconsistent, false or fabricated statements *made by the defendant to peace officers* (Italics ours) for the purpose of misleading . . . are therefore admissible in evidence for the purpose of showing a consciousness of guilt by the defendant."

This instruction has the same vice noted in the preceding instruction. The instruction assumes that inconsistent, false, or fabricated statements were made by the defendant to peace officers. The peace officers claimed certain statements were made to them by the defendant. The defendant denied making them. There was therefore a conflict in the evidence on this subject, and the question whether they were false or fabricated was for the jury to determine.

▮ It is finally argued by the People that the evidence of defendant's guilt in the case was so strong and convincing that no miscarriage of justice resulted from the giving of the instructions or from the errors complained of. While the evidence that defendant was found in the possession of the stolen goods is substantial, the fact that he entered the building or aided and abetted others in so entering, is purely circumstantial, and we are convinced that article VI, section 4½ of the Constitution has no application. See *People* v. *Weatherford, supra,* where it is said:

"The phrase 'miscarriage of justice'," within the meaning of the Constitution, (Art. VI, § 4½) " 'does not simply mean that a guilty man has escaped, or that an innocent man has been convicted. It is equally applicable to cases where the acquittal or the conviction has resulted from some form of trial in which the essential rights of the people or of the defendant were disregarded or denied.' "

The defendant should have a new trial.

Judgment and order reversed and cause remanded for a new trial.

Barnard, P. J., and Marks, J., concurred.