[Crim. No. 1369. Fourth Dist. Sept. 11, 1958.]

THE PEOPLE, Respondent, v. JACK PIERCE, Appellant.

Thomas Whelan for Appellant.

Edmund G. Brown, Attorney General, William E. James and Arthur C. de Goede, Deputy Attorneys General, for Respondent.

GRIFFIN, P. J.—Defendant-appellant Jack Pierce was indicted in count one with defendant James Springer on a charge of conspiracy to commit the crime of bookmaking (Pen. Code, § 182, subd. 1; and Pen. Code, § 337a.) Three overt acts are charged: one, that about June 22, 1957, one Schrader met with defendant Springer at Tony's Newport Café and Bar at 5034 Newport Boulevard in Ocean Beach; second, that on or about June 22, 1957, Schrader placed a horse race bet with Springer and he accepted it in the presence of appellant Pierce; and third, that about June 26, 1957, Schrader placed a race horse bet with defendant Springer who then and there accepted it. The fifth count charges appellant Pierce with the crime of permitting the use of premises for bookmaking (Pen. Code, § 337a, subd. 5), i.e., that about June 22, 1957, while the owner or occupant of a building, to wit, Tony's Newport Café and Bar, he permitted same to be used and occupied for the purpose of bookmaking. Both defendants were found guilty of these charges by a jury. Appellant was granted conditional probation. He appealed from the judgment of conviction and order denying a new trial. The first claim is that the verdict was against law and evidence mainly because the verdict was based upon incompetent and irrelevant evidence.

Appellant operated, as the owner, Tony's Newport Café and Bar, at the address alleged. An investigator by the name of Schrader was employed in making investigations in reference to bookmaking activities in the county. He testified generally

that in June, 1957, he met one Jackson in a bar in San Diego and went to appellant's place of business; that there Jackson introduced him to appellant; that in the course of the conversation appellant informed him that "Herb, the bookie" (defendant Springer) was one of the best around and that Herb would take a bet from just about anyone, probably even from the law; that generally they became interested in horse racing talk and appellant offered to take him to the Tijuana race track; that he said he knew his way around there and knew the right people; that appellant told him about Herb, "the bookie out there"; that several people came in while he was in the restaurant and talked to appellant; that he left appellant's place of business and returned on June 21st alone; that some conversation ensued about him wanting to place a couple of bets; that appellant told him Herb, the bookie, was around and shortly thereafter appellant left the bar and returned with Herb and introduced him to Schrader; that Schrader told Herb, in appellant's presence, that he wanted to make a couple of "investments"; that he (Schrader) made two $5.00 bets on horses running at Hollywood Park, which Herb accepted; that he handed Herb a twenty-dollar bill and said "$5.00 to win on Larks Music running in the fourth race at Hollywood and $5.00 to win on The Pie King running in the seventh race . . ."; that he took the names of the horses from the entries in the National Daily Reporter of that date which he subsequently marked showing the horses and the amounts bet with the notation "Herb" (Exhibit No. 1, received in evidence over appellant's objection); that Herb handed him back $10 and said if he was not around to collect his winnings, if any, he would leave them there with appellant; that Herb told him that he would always be around there or in the card room near-by if he cared to locate him again; that on June 26th, he saw defendant Springer in a card room a few doors from Pierce's bar, sitting at a card table; that in the presence of Jackson he handed him $5.00 to win on Jaylpee, Jr., eighth race, at Monmouth, and showed him the entry on the scratch sheet he had so marked with the notation "Herb"; and that Herb said "Okay." This scratch sheet (Exhibit No. 2), thus marked and initialed by him was also received in evidence over objections. These horses did not win.

 The first objection involves the question of the admissibility of the two exhibits 1 and 2, offered in evidence by the prosecution. These exhibits were identified as scratch sheets of the days on which the alleged bets were made. Ap-

pellant contends that the notes placed thereon by Schrader were hearsay evidence and were inadmissible. Respondent concedes these notes were hearsay as to this appellant but contends they were otherwise admissible under the Uniform Business Records as Evidence Act (Code Civ. Proc., § 1953f), or that the reception of those notes in evidence along with the properly identified scratch sheet was harmless error.

It appears that Schrader testified to the facts related without the aid of the notes, but on cross-examination he did look at them when he attempted to refresh his memory as to the bets in answer to a question propounded by appellant's counsel. It is the general rule that where one uses a writing made by him at the time for the sole purpose of refreshing his memory, the writing does not of itself become admissible in evidence by the prosecution in corroboration of the witness' testimony. It has been held, however, that where the witness testified fully, without refreshing his memory by the use of a memorandum, that although it was error, it was not prejudicial error to later admit the memorandum as evidence. (*People* v. *Allen*, 37 Cal. App. 180, 188 [174 P. 374]; *Estate of Packer*, 164 Cal. 525 [129 P. 778].) It does not appear that section 1953f of the Code of Civil Procedure would authorize the receipt of such notes in evidence if they were used merely for the purpose of bolstering or corroborating the testimony of the witness. Since the witness did testify to the facts set forth without the aid of the notes to refresh his memory and since the form chart was otherwise admissible to show that the horses indicated did run at the tracks mentioned on those dates, it cannot be said that it was prejudicial error to admit the exhibits into evidence with the added notations.

 A Mrs. Motto testified that during July, 1957, she was engaged in bookmaking and had been convicted of this crime; that she knew defendant Springer and that he called at her home two or three times; that in placing bets she called Atwater 44-722; that she telephoned in bets for "Tommy," the barber, whom she was then unable to locate. A motion to strike this entire testimony was continued for the purpose of allowing the prosecution to connect it up with the appellant. Schrader testified that in the meantime he endeavored to locate Tommy, the barber, but was unable to find him, and the prosecutor remarked in the presence of the jury that he desired a continuance for this purpose although he did not know what his testimony would be, but if called to testify he

would be under oath. The court denied the continuance and subsequently granted the motion with definite instructions to the jury to disregard it. It is ordinarily presumed that the jury followed the court's instruction in this respect. (*People* v. *Prather,* 134 Cal. 436 [66 P. 589, 863].) Appellant claims that this error was of the exceptional type and was not cured by the order. It does not affirmatively appear that prejudicial error resulted.

One Myrtle Garvin, sister-in-law of Springer, testified she had known Springer for many years; that within the past three years she was at his home two or three times a week and that he was making books on horse racing by telephone and bragging about it; that appellant Pierce came by there three or four times. On cross-examination she testified that she did not get along with her "in-laws" or other relatives very well and had not spoken to them for some time; that she had not been at Springer's home since the property was sold in 1956. A motion was then made by appellant to strike her entire testimony on the ground that it involved a time prior to the date of the claimed overt acts; that it was therefore inadmissible, but if admissible, it involved a separate conspiracy; that the witness was prejudiced and her testimony was unworthy of belief; and to allow this testimony to remain in evidence after appellant's motion to strike it, was prejudicial error of the highest degree, citing such authority as *Fiswick* v. *United States,* 329 U.S. 211 [67 S.Ct. 224, 91 L.Ed. 196]; *Kotteakos* v. *United States,* 328 U.S. 750 [66 S.Ct. 1239, 90 L.Ed. 1557]; and *Grunewald* v. *United States,* 353 U.S. 391 [77 S.Ct. 963, 1 L.Ed.2d 931].

Defendant Springer testified in reference to Mrs. Garvin's prejudice against him and his family, denied her testimony in general, but said that if she did see anything that looked like bookmaking going on at his home at the time indicated, there was a possibility that she overheard him placing a bet, which he has done for himself on many occasions; that he had played cards in a place a few doors from Pierce's bar; that he did not recall seeing Schrader before the day of trial, but that he may have been in appellant Pierce's bar on June 22, 1957. He then testified that appellant Pierce had never been in his home but he had played cards with him at this particular card room.

Appellant Pierce denied seeing Schrader at the time indicated and denied generally his testimony. He particularly claimed that he never permitted defendant Springer to use

his place of business as a place to conduct bookmaking of any kind.

It does appear from the testimony of Mrs. Garvin that prior to the time of the alleged overt acts appellant Pierce and defendant Springer were acquainted. The testimony as to the nature and duration of their acquaintanceship was admissible so long as it had some bearing on or tended to prove the formation of the conspiracy charged. (*People* v. *Stevens,* 78 Cal.App. 395 [248 P. 696] ; *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 185 [281 P.2d 250] ; *People* v. *Gordon,* 71 Cal. App.2d 606, 628 [163 P.2d 110].) While the question of the witness' prejudice against Springer was very well shown, the question of the weight of her testimony was one for the jury. (19 Cal.Jur.2d 230-231, § 467.)

█ The last point involves the denial of appellant's motion for a new trial on the ground of claimed newly discovered evidence. Apparently this is predicated upon some affidavits filed by appellant stating that the witness Mrs. Garvin was possessed of a generally bad reputation for truth and veracity, and upon a new trial her sisters, brothers, mother and others would so testify, and that he had no reason to believe she was going to be a witness at his trial because he did not know her. The record on appeal does not include the affidavits mentioned. Even assuming they would show what appellant contends, such evidence would only amount to possible impeachment of her testimony and it is not believed that a different result would follow. No prejudicial error resulted in the denial of the motion. (*People* v. *Vukojevich,* 25 Cal.App. 459, 460 [143 P. 1058] ; *People* v. *Long,* 15 Cal.2d 590 [103 P.2d 969].)

Judgment and order denying a new trial affirmed.

Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 5, 1958.