[Crim. No. 1470.   Fourth Dist.   Mar. 3, 1961.]

THE PEOPLE, Respondent, v. ROBERT ALLEN et al.,
Appellants.

Edgar G. Langford and J. Perry Langford for Appellants.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

GRIFFIN, P. J.—Defendants appeal from judgments of conviction of conspiracy to commit theft and attempted grand theft. They also appeal from orders denying their motion for a new trial.

The evidence discloses that defendants attempted to steal money from Lewis Compton by means of a confidence scheme known as the "Jamaican switch." According to the testimony of a police officer who qualified as an expert on the subject, the Jamaican switch is a method by which two or more Negro confidence men induce a victim, who is also a Negro, to withdraw money from a bank and then deprive him of it by switching envelopes or by some other trick. In perpetrating this scheme, one of the confidence men assumes the role of a "Jamaican sailor" and the other swindler poses as the "helpful stranger," also known as the "cat man." In the course of the swindle, the Jamaican sailor usually displays a roll of paper "play" money covered with a genuine five- or ten-dollar bill, which roll is known as a "Michigan bankroll" or a "Chicago roll."

On April 22, 1960, Mr. Compton deposited some money at the Logan Branch of the Bank of America in San Diego. As he left the bank with his bankbook visible in his shirt pocket, the defendant Allen approached him and, speaking in a dialect, asked for information. At this time, the defendant Finney arrived at the scene and, pretending not to be acquainted with Allen, he entered into the conversation. During the conversation, Allen displayed a roll of what appeared to be paper money and stated that it contained $300. At one

point in the discussion, Allen and Finney feigned an argument as to whether Negroes could withdraw money from a bank. Finney removed Compton's bankbook from his shirt pocket and, noting that it contained a balance of $600, stated that Compton could draw the money out at any time. Allen, in the Jamaican sailor role, continued to insist that this was not true and offered to bet Compton a sum of money that he could not withdraw $500 from his bank. Finney encouraged Compton to accept the bet but Compton refused, saying that he had to buy some baseball equipment. Compton left and attended to this errand. On his way, he again passed by the bank and observed defendants standing near the bank talking to an unidentified person. Compton immediately reported the incident to the police and they arrested Allen near the bank a short time later. Compton's testimony that the defendants had accosted him near the bank was corroborated in part by a housewife who lived near the bank who testified that she had observed the defendants off and on for about six hours, commencing about 10 a. m. on the day in question, during which time they intermittently walked up and down the sidewalk in front of the bank. Occasionally they paused to talk to each other and then resumed their pacing.

Evidence was introduced that defendants on numerous occasions had obtained money from other victims by using the Jamaican switch confidence game. Other testimony disclosed that six days before the commission of the offenses here charged, defendant Allen admitted to a police officer of the city of Compton that he was deriving his livelihood from bunco operations. This same officer testified that on April 21, 1960, the day before the instant offenses occurred, defendant Finney admitted to him that he was engaged in Jamaican switch operations and that he, defendant Allen, and another person were making $60,000 to $80,000 a year by such operations. Another Compton police officer testified that previously, on September 17, 1959, Finney told him that he was working the Jamaican switch. Officer Wise of the Los Angeles Police Department testified that on July 28, 1960, about two weeks before the trial of the instant case, he conversed with Finney in the presence of Allen and a third person, who were sitting with Finney in his car which was parked near the intersection of 53d and Duarte Streets in Los Angeles. Officer Wise said he asked Finney where he worked and Finney replied that he had not worked in a long time and that he played at bunco. The officer said, "What, the Jamaican switch?" Finney re-

plied, "Yes. I am on bail now in San Diego for it. We pulled two capers down there and got caught on one."

Allen's defense was that he had met Compton, known to him as "Four-trey Slim," in the company of one "Hip-walking Jimmy" and that they had discussed playing dice, but that no attempt was made to perpetrate anything like the Jamaican switch. Finney's defense was an alibi that he was in Los Angeles at the time of the alleged offense. This alibi was corroborated by the testimony of his girl friend, who claimed to have seen him in Los Angeles on the day in question, and by the testimony of Allen that he had not seen Finney on the day of the alleged offense.

During the cross-examination of Allen, he was asked if he had ever been convicted of a felony and he replied that he had not. The district attorney asked him if he knew what a felony was and he responded, "It means going to the penitentiary, doesn't it?" A further query was put to him and Allen replied that he had never been to the penitentiary. Again he was asked if he had been convicted of a felony and defense counsel said that the witness had asked to have a felony defined for him. The court stated, "Any crime that you may be sentenced to the penitentiary for, that is a felony," and then Allen said, "Yes, sir." The district attorney said, "What is it?" and Allen replied "Narcotics possession." It was subsequently revealed that Allen's prior conviction was a misdemeanor, since he had first received probation and upon revocation thereof was sentenced to the county jail. Later, when these facts were brought to the attention of the court, the trial judge instructed the jury concerning the distinction between a felony and a misdemeanor conviction and stated that the offense which Allen had described as a felony turned out to be a misdemeanor and that the jury should forget about it and not hold it against him and stated further that he could not be impeached on account of it.

The defendants contend that the trial court erred in giving Allen an incomplete definition of a felony, that this error was prejudicial as to Allen, and since Allen had testified in support of Finney's alibi, it was prejudicial as to Finney also. We are satisfied that the trial court did not err in giving defendant Allen the basic statutory definition of a felony set forth in Penal Code, section 17. Under the facts then known to the trial court, this definition was complete and adequate, although facts subsequently revealed disclosed that Allen's conviction was of a crime punishable either as a felony or a misdemeanor

and that it was reduced to a misdemeanor conviction by the imposition of a sentence in the county jail after revocation of probation. In *People* v. *Banks,* 53 Cal.2d 370 [348 P.2d 102], an analogous situation was presented. The Supreme Court said, at page 379:

"When the trial court . . . accepted defendant's admission that he had been convicted of a felony . . . the court did not know the facts as to defendant's Alameda County plea and probation. Defendant and his then counsel, however, knew or were chargeable with having known those facts, and the failure to present the contention that defendant had not been convicted of a felony and the facts upon which such contention is based was due to defendant's 'negligence or fault.' "

Here, the defendant and his counsel were chargeable with knowledge of the circumstances of his prior conviction and should have informed the court that its definition of a felony was insufficient under the facts. They cannot, after their failure to inform the court of these facts, contend that the court's definition was erroneous and that it misled the defendant Allen to his prejudice.

The defendants also urge that the prosecutor should not have continued his questioning on the subject of prior convictions after Allen's first answer that he had not been convicted of a felony. We do not agree with this contention. ▉ The prosecution has a limited right to cross-examine a defendant witness as to prior felony convictions. (*People* v. *Linyard,* 151 Cal.App.2d 50, 55 [311 P.2d 57]; *People* v. *Chenault,* 74 Cal.App.2d 487 [169 P.2d 29]; *People* v. *Bauweraerts,* 164 Cal. 696 [130 P. 717]; *People* v. *Harvey,* 22 Cal.App.2d 532 [71 P.2d 841]; *People* v. *Kepford,* 52 Cal.App. 508 [199 P. 64].) Such cross-examination is limited by the requirement that it be conducted in good faith. (*People* v. *Linyard, supra.*) Here, defendants do not contend that the prosecuting attorney's cross-examination was not conducted in good faith, nor did they object to these questions when they were asked. ▉ As soon as it was made clear that Allen's answer that he had been convicted of a felony was erroneous, the trial judge struck the answer and admonished the jury to disregard it. It is presumed that the jurors were true to their oaths and followed the court's admonition. (*People* v. *Dabb,* 32 Cal. 2d 491, 499 [197 P.2d 1]; *People* v. *Pierce,* 163 Cal.App.2d 460, 464 [329 P.2d 508]; *People* v. *Grimes,* 113 Cal.App.2d 365, 371 [248 P.2d 130].)

▉ It will be noted that the evidence of guilt was clear

and convincing. On direct examination and by unresponsive answers to proper questions on cross-examination, the defendants gave damaging testimony as to other misconduct on their part. Finney testified that he was an habitual gambler, that he had served a term in jail for ''nonsupport,'' and that he had never filed an income tax return in his life. Allen testified that he was an habitual dice player and that he sometimes used a ''phon*ey*'' roll of money in order to entice others into playing dice with him. He testified that he was incarcerated in the Los Angeles county jail between December 15, 1959 and March 25, 1960. In this context, even if it be held that the cross-examination of Allen was erroneous, it could not possibly have prejudiced either defendant. (*People* v. *Bauweraerts, supra,* 164 Cal. 696; *People* v. *Bigelow,* 104 Cal.App.2d 380 [231 P.2d 881].)

No other points are raised on this appeal.

The judgments and orders appealed from are affirmed.

Shepard, J., and Coughlin, J., concurred.