[Crim. No. 6906.    Second Dist., Div. Three.    May 23, 1960.]

THE PEOPLE, Respondent, v. MANUEL MORENO RENTERIA, Appellant.

Manuel Moreno Renteria, in pro. per., and Patrick E. Duggan, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

VALLÉE, J.—By information defendant was accused in two counts of assault with intent to commit murder. A jury found him guilty as charged. A motion for a new trial was denied. Defendant appeals from the judgment and order denying a new trial.

About 9:30 p. m. on October 30, 1958, Deputy Sheriffs Little and Hargreaves were staked out in county territory near El Monte looking for defendant, an escapee. They were in an unmarked automobile with a white spotlight. They knew there was a warrant outstanding against defendant for escape. About 9:55 they saw defendant, Virginia Palma, and her 18-month-old daughter in a 1949 Chevrolet. As defendant's car passed, traveling between 20 and 25 miles an hour, the deputies followed. When defendant noticed he was being followed, he increased the speed of his car to 40 or 50 miles an hour and told Mrs. Palma he had probably run a red light. Mrs. Palma asked him several times to stop but he did not. Defendant reached into the glove compartment of the car and obtained a gun which he held on the steering wheel. The officers had the spotlight on the rear window and directed him to pull over. Defendant leaned out of the window and pointed the gun in the direction of the deputies' car.

Defendant's car finally careened into a driveway and stopped. Defendant stepped out and fired four shots at the officers. The first shot struck the windshield of the officers' car. Little was covered with glass from the shot. Hargreaves shot at defendant, the bullet passing through the windshield of the officers' car. Little fired twice at defendant.

Defendant ran up a driveway and got away, hitchhiked to Bakersfield, from there to Fresno, to San Francisco, and to Richmond. On the way he stole an automobile.

In rebuttal Officers Pieschke and Becker of the state highway patrol testified that on November 11, 1958, they received a broadcast to look for a 1955 or 1956 Chevrolet with license

plates which did not correspond. The officers were in uniform and driving a patrol car. The Chevrolet passed them; the officers turned the red light on; and the Chevrolet stopped. The officers got out of the patrol car. Defendant stepped out of the Chevrolet, walked toward Pieschke, and ''pulled a revolver.'' Pieschke told defendant to halt, throw the gun away, and put his hands on his head. Defendant began shooting. The officers returned the fire. Defendant ran over a nearby railroad track and across a barbed wire fence, exchanging shots. In the chase Pieschke shot defendant in the leg.

Officer Little testified the windshield with the holes in it on the sheriff's car, in which he and Officer Hargreaves followed defendant on the night of October 30, 1958, had been replaced but he did not know when it had been done. Defendant contends the prosecution deliberately suppressed the windshield. There is no merit in the contention. The record is devoid of any showing the officers deliberately suppressed the windshield. It was damaged. The car was useless without it. In the normal course of events the sheriff replaced it with another to make use of the car. Further, photographs of the windshield, taken before it was replaced, were introduced in evidence showing it in its damaged condition.

It is contended the district attorney was guilty of prejudicial misconduct in questioning defendant as to the details of prior offenses. On cross-examination defendant was asked if he was ever convicted of a felony. He answered, ''Yes, sir.'' On further questioning he testified the offense was taking possession of an automobile, committed in 1943; in 1944 he was convicted of assault with a deadly weapon; in 1950 he was convicted of grand theft; in 1958 he was convicted of assault with intent to commit murder. The examination was proper. It may be shown by the examination of a witness that he has been convicted of a felony, the number of felonies, and the names of them. (Code Civ. Proc., §§ 2051, 2065; *People* v. *Tubby*, 34 Cal.2d 72, 79 [207 P.2d 51].)

It is urged the court committed prejudicial error in permitting testimony of several officers in rebuttal. Defendant argues the testimony was properly part of the People's case in chief. As related earlier, the testimony of Officer Pieschke was given in rebuttal. He was asked what happened when he saw defendant's car on November 11, 1958. The question was objected to on the ground the matter was irrelevant, incompetent, immaterial, and did not tend to prove or dis-

prove any of the issues in the case. The objection was over-ruled. After this ruling the officer was interrogated about the incident at great length without objection. Manifestly the objection was not well taken. The court's attention was not called to the present objection that the testimony was not proper rebuttal. And here defendant does not tell us why the testimony was not proper rebuttal. Our examination of the record indicates it was properly received in rebuttal since defendant had testified he did not shoot at Pieschke or Becker.

As a witness for defendant, a Mr. Walvoord testified he was in the area when the shooting occurred about 9:30 p. m. on October 30, 1958; he walked to the police car and noticed two bullet holes in the windshield; he concluded both bullet holes had been made by shots from inside the car; he saw no glass inside the car; he called the attention of the officers to the fact there was no glass inside the car. Called in rebuttal, Officers Corbett, Little, and Hargreaves flatly contradicted Walvoord. Defendant states it was error to receive their testimony in rebuttal. There was no objection to their testimony and the point may not be considered.

While on the stand defendant testified he could not recall having escaped from custody shortly before the shooting on October 30, 1958, and he was not aware of the fact he was being tracked as an escapee. In rebuttal Officers Mumpower and Barnett testified to the fact that defendant had escaped from custody shortly before October 30, 1958. Defendant asserts it was error to receive their testimony in rebuttal. Again, since there was no objection to the testimony, the point may not be considered.

Defendant contends he was denied an opportunity fully to cross-examine Officer Corbett. On direct examination Corbett qualified as an expert on ballistics. He testified he examined the windshield of the sheriff's patrol car about 10 p. m. on October 30, 1958. He said there were two holes in the windshield; one bullet went through from the outside; the other went through from the inside. On cross-examination he was shown and examined a piece of windshield glass with a bullet hole in it. He was asked which side of that glass the bullet entered. Objection on the ground of immateriality was sustained. He was asked, "Can you tell me, please, from look-ing at that glass, in your opinion, which side of the glass the bullet was fired into?" Again objection was sustained on the ground of immateriality. The officer was then asked and an-swered: "Q. (By Mr. Duggan) [attorney for defendant]:

Do I understand, officer, that you based your opinion as to which way the bullet holes went through this windshield by looking at the hole in the windshield? A. That's right." The piece of glass was later introduced in evidence. Defendant asserts error in the rulings. They were erroneous. Defendant had testified he did not have a gun on October 30, 1958, and had not shot at the officers. Walvoord's testimony was to the effect the two holes in the windshield were from bullets shot from inside the car. Patently the questions asked Corbett on cross-examination were asked to test the qualifications of the witness. If he had testified the bullet had entered on one side of the glass and it was later shown it had in fact entered on the other side when the gun was shot, it might have seriously affected his qualifications in the minds of the jury. Whenever an expert witness gives his opinion, he may be *fully* cross-examined thereon by opposing counsel. (Code Civ. Proc., § 1872.) ▮ A party is entitled to examine an expert witness as to his qualifications so that the full weight to be accorded his testimony will become apparent. (*Moore* v. *Belt,* 34 Cal.2d 525, 532 [212 P.2d 509].)

▮ It is contended the court unduly restricted the cross-examination of Officer Little. Twenty-five pages of the transcript were used in cross-examination of the officer after he had testified on direct in the case in chief; two pages were used in recross. After he testified in rebuttal, 25 pages were used in cross-examination. The witness was then excused. Counsel for defendant stated he did not have any objection. At the conclusion of the evidence he said he assumed Officer Little was "nowhere around," and if the district attorney had no objection to his reading some testimony given by the officer at a preliminary hearing in another matter involving defendant he would read it to the jury, and if he objected he would have Little come back. He said the testimony was impeaching. The court said, "Well, he has been around here for a long time. He waited around here at great length yesterday to be available in case you might want him, Mr. Duggan, and I am not going to delay the trial just to have him run down." The matter was in the court's sound discretion. "[A]fter the examinations on both sides are once concluded, the witness cannot be recalled without leave of the court. Leave is granted or withheld, in the exercise of a sound discretion." (Code Civ. Proc., § 2050.) The court did not abuse its discretion in denying the request, and there was no curtailment of the cross-examination of Little.

Defendant contends that because of the errors asserted he was denied a fair and impartial trial in violation of due process. Defendant was accorded a fair trial. The only error was in not permitting the inquiry with respect to the hole in the piece of windshield glass. We are satisfied the error did not result in a miscarriage of justice. The evidence of guilt was overwhelming. It is not reasonably probable that a result more favorable to defendant would have been reached in the absence of the error.

The judgment and order denying a new trial are affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied June 14, 1960, and appellant's petition for a hearing by the Supreme Court was denied July 20, 1960.