[Crim. No. 11728.    In Bank.    Aug. 20, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM WESTWOOD McCLELLAN, Defendant and Appellant.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Thomas J. Keenan, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Ronald M. George, Deputy Attorney General, for Plaintiff and Respondent.

PETERS, J.—This is an automatic appeal (Pen. Code, § 1239, subd. (b)) from a judgment of the Superior Court of Orange County, after trial before a jury, on verdicts finding

defendant guilty on two counts of murder in the first degree and fixing the penalty of death on each count. Wayne McFarland was also charged with the murders. He pleaded guilty and testified against McClellan at the trial.

On the evening of February 16, 1967, the defendant and McFarland entered the Gaslight Cafe in Stanton. Shortly after the stage show began, defendant jumped onto the stage with a small automatic weapon in his hand, stepped into the spotlight, grabbed the microphone, and told the musicians and the audience—seated at the bar and at tables between the bar and the stage—that a holdup was underway. He told those in the audience to put their heads down and look at the floor. Since some in the audience initially believed defendant was part of the stage show, defendant repeated his threat to shoot anyone who did not do as he had told them.

Defendant left the stage and went to the rear of the bar near the cash register. McFarland had been at this location forcing the bartender to place money from the cash register into a bag and holding him at gunpoint. Defendant picked up the bag, containing some $800, and told the bartender ''let's go back to the safe.'' As the bartender, followed by defendant, neared the swinging doors at the exit from the main room of the cafe, James Seagris, a customer, threw a chair at defendant which struck the defendant in the back. Seagris dove under a table, and defendant whirled and fired one shot downward. People thereupon began to scream and dive under tables, and defendant and McFarland started to run out of the cafe, the latter firing three shots, apparently towards the ceiling, as he ran. Another customer, Joe Gray, ran after defendant through the swinging doors and into a passageway; defendant fired five or six shots at Gray and Gray fell to the floor. Defendant and McFarland left the cafe and drove off in a car. Both Seagris and Gray died from gunshot wounds.

Defendant does not challenge the sufficiency of the evidence on the issue of guilt. The evidence is overwhelming and convincing against him.

Defendant's contentions are as follows:

1. Shortly before defendant's trial began, the prosecutor held a meeting of witnesses at the Gaslight Cafe to reenact the offenses. Defense counsel was not present at this meeting, and he was not invited or notified of it. Defendant claims that the holding of this meeting violated his right to counsel as defined in *United States* v. *Wade*, 388 U.S. 218 [18

L.Ed.2d 1149, 87 S.Ct. 1926]. There is no merit to this contention.

At the meeting, agents of the prosecution apparently played the roles of defendant and McFarland, reenacting the robbery and shootings "with the advice and direction of the witnesses." The prosecutor alleges that no written statements or notes were taken, but numerous photographs were taken, many of which were introduced into evidence at the trial.

Defendant's contention that the prosecutor had a duty to notify defense counsel of the meeting and to permit him to attend finds no support in either the language of or the considerations underlying the *Wade* decision. *Wade* held specifically that criminal defendants are entitled to the presence and aid of counsel at post-indictment lineups. Underlying the decision was the court's finding that "the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity . . . to attack the credibility of the witness' courtroom identification." (388 U.S. at pp. 231-232 [18 L.Ed.2d at pp. 1159-1160].) Suggesting the potential scope of its decision, the court stated that it would "scrutinize *any* pretrial *confrontation of the accused* to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial. . . . [We will] analyze whether potential substantial prejudice to defendant's rights inheres in the particular *confrontation* and the ability of counsel to help avoid that prejudice." (*Id.* at p. 227 [18 L.Ed.2d at p. 1157]; italics added.)

In the instant case there was no *confrontation* of the defendant involved in the meeting of the witnesses, who were customers or employees of the bar. There was no possibility that the defendant would be treated or used unfairly in the presence of prospective trial witnesses so as to influence improperly their identification of or testimony about him at trial. Since the defendant was not present, this meeting was no different, for Sixth Amendment purposes, than a meeting of witnesses at the prosecutor's office or a conference between the prosecutor and any single witness. Certainly an accused has no Sixth Amendment right to have his counsel present on such occasions.

The accused does have a right of access to written statements or notes of interviews with witnesses, pursuant to a discovery order. But the meeting in the instant case violated no such order. At the preliminary examination, the municipal

court had granted defendant's motion for discovery, but this order was effective only during the preliminary hearing, which was held before the meeting. Furthermore, the order only covered written statements of witnesses and notes of interviews with them. There was no outstanding discovery order of any kind when the meeting of witnesses was held. It should be noted that defense counsel during the trial had access to the photographs taken at the meeting.

■ 2. Pursuant to Penal Code section 1086, which provides that challenges for cause "must be taken, first by the defendant, and then by the people," defense counsel was required to conduct *voir dire* examination of the prospective jurors before the prosecution did so (see *People* v. *Spraic,* 87 Cal.App. 724, 726-727 [262 P. 795]). Defendant claims that this procedure denied him due process of law in that it forced his counsel to first raise with the jurors the possibility of the death penalty and thereby possibly give the jury the impression that he viewed the case as one in which the death penalty might be proper.

Prior to the *voir dire* examination, defense counsel moved that the prosecution be required to proceed first in questioning jurors for cause. "[A] great majority of my questions to the jurors are going to be concerned with the death penalty, and the guilt or innocent trial comes first, and I think they are going to get the impression then that I believe that it is a foregone conclusion that they are going to get [to] the penalty phase." Based on section 1086, the motion was correctly denied.

At the outset of the *voir dire* examination of prospective jurors, the trial court read the information and informed them that if the jury found the defendant guilty as charged and fixed the offense as first degree murder, then it would be required to make a "determination with respect to penalty . . . either life imprisonment or death." The court continued, "I want to ask each of you . . . with respect to the penalty phase, whether any one of you in a proper case has any religious or philosophical beliefs that would cause you, as a juror in a proper case, as I have stated, to be opposed to the death penalty."

Defense counsel then conducted his examination of the prospective jurors. At this point, the prosecutor had not yet announced to the jury that he would seek the death penalty should the verdict be guilty of first degree murder, but he had previously indicated this to the court and to defense counsel.

Without citation of authority, defendant states in his opening brief that "the only fair procedure, would be for the prosecutor prior to the *voir dire* of the jury to announce to them that he would or may be seeking the death penalty upon conviction of the defendant. Thereafter, the prosecution should *voir dire* before the defense. . . .

"[U]pon first hearing counsel for the defendant question regarding the subject of death, it cannot be said within any degree of certainty that . . . [the] juror does not get an idea or impression that even the defense counselor believes it might be a 'proper case.' "

It cannot be concluded on the basis of any such speculation that Penal Code section 1086 denies "fundamental fairness" to one accused of first degree murder. Here the court had instructed the jury prior to defense counsel's questioning that it would have to choose between life imprisonment or death only if it should find the defendant guilty. With properly phrased questions from defense counsel the prospective jurors would certainly understand that he was only being thorough and preparing for all contingencies in asking questions relating to the death penalty. The trial judge made this point in denying defense counsel's motion.

Defendant does not urge any error under *Witherspoon* v. *Illinois*, 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770], relating to the exclusion of two prospective jurors and two prospective alternate jurors because of their reservations concerning the death penalty. From our examination of the record, we are satisfied that there was no such error. Discussion of the reasons for our conclusion is unnecessary since, as will be seen, reversal of the penalty trial is required on other grounds.

3. The prosecution rejected defense counsel's offer to stipulate that if the jury found defendant was one of the two robbers of the Gaslight Cafe, defendant was guilty of two counts of first degree murder under the felony-murder rule. Defendant claims that he was denied due process of law when, in spite of this offer, the trial court allowed the prosecution to present at the guilt trial evidence that defendant rather than his accomplice shot Seagris.

This problem arises under the following circumstances. Before the prosecutor made his opening statement to the jury in the guilt trial, defense counsel offered to stipulate that the shots which killed Seagris and Gray were fired as a result of the armed robbery, and that if the jury determined that defendant was one of the robbers it should find him guilty of

two counts of first degree murder. Defense counsel's theory was that on the basis of such a stipulation defendant could properly be convicted of first degree murder under the felony-murder rule regardless of whether it was defendant or his accomplice who fired the shots. (See *People* v. *Lookadoo,* 66 Cal.2d 307, 314 [57 Cal.Rptr. 608, 425 P.2d 208]; *People* v. *Miller,* 37 Cal.2d 801, 805-806 [236 P.2d 137].) His purpose in offering this stipulation was to prevent introduction in the guilt trial of evidence which, in view of the felony-murder rule, he felt was at least *unnecessary* if not strictly "irrelevant" in that trial—evidence which he felt would only show *aggravation* and therefore should properly be presented only in the penalty trial.

The court allowed the prosecutor to consider the proposed stipulation overnight; defense counsel indicated that he would like to make a "formal motion" [ostensibly to compel the prosecutor to accept the proposed stipulation] "perhaps tomorrow morning." Although the prosecutor did not accept the stipulation, no such motion was ever made.

Defendant contends that the prosecutor's refusal to stipulate was prejudicial on the following theory: Defense counsel, wishing to dispute the identification of defendant as one of the Gaslight Cafe robbers, could not in the guilt trial stray from the issue of identity to the issue whether defendant rather than McFarland shot Seagris[1] without tacitly conceding guilt. Therefore, he had to wait until the penalty trial to attempt to counter the prosecutor's evidence that defendant shot Seagris; at this time, the jury had probably already made up its mind on the issue. Although the question of who shot Seagris was not significant, under the felony-murder rule, in the guilt trial, it was of possibly great significance in the jury's determination of penalty since the jury's probable conclusion that defendant shot Seagris as well as Gray (see fn. 1) might well have influenced it to sentence defendant to death rather than to life imprisonment.

The prosecutor gave as his reason for rejecting the stipulation that to delete from his witnesses' testimony all reference to who fired particular shots would unduly break up their testimony on other matters such as identity and sequence of events.

---

[1]Defendant, in his opening brief, now concedes that he shot Gray. He appears to allege that only the evidence that defendant shot Seagris was prejudicial since it was only this evidence he sought to rebut.

There are several reasons why defendant was not denied due process of law or otherwise improperly prejudiced by the prosecutor's refusal to accept defense counsel's stipulation. First, it is by no means clear that the proposed stipulation, if accepted, would have precluded the prosecutor from presenting testimony regarding who fired particular shots. If the prosecutor had accepted defense counsel's stipulation that there was an armed robbery during the course of which the robbers fired shots which killed Seagris and Gray, he still might have been able to present testimony indicating which robber fired shots at particular times and places as part of his effort to establish the identity of defendant as one of the robbers.

Second, there is a strong policy against depriving the state's case of its persuasiveness and forcefulness by forcing the prosecutor to accept stipulations that soften the impact of the evidence in its entirety. "Parties, as a general rule, are entitled to prove the essential facts—to present to the jury a picture of the events relied on." (53 Am.Jur., § 105.) In *People* v. *Pollock,* 25 Cal.App.2d 440 [77 P.2d 885], the court held that the district attorney in a rape case was not obligated to accept the defendant's offer to stipulate that there had been intercourse. "Except as ordained by law, the district attorney, in connection with the performance of an official act, is not required to accept the judgment of a stranger to the office." (*Id.* at p. 444.)

The general rule that the state cannot be restricted by stipulations in presenting its case is particularly compelling when the likely effect of a stipulation removing certain matters from the trial is to make much more difficult the state's coherent presentation of other evidence. In the instant case, the prosecutor was understandably reluctant to agree to delete from the testimony of his witnesses all references regarding which robber fired shots and at whom. Such an agreement would have hampered his ability to prove coherently what happened at the Gaslight Cafe on the night in question.

Third, the proffered stipulation in effect required the prosecutor to seek conviction only under the felony-murder rule. It is doubtful whether the defendant could properly narrow the prosecutor's options in this respect. (See *People* v. *Lookadoo, supra,* 66 Cal.2d at p. 315.) It is quite possible that the prosecutor desired to make out a case of first degree murder by premeditation as well as by felony murder. Under the former

approach, of course, proof regarding which robber shot Seagris and Gray would have been crucial.

The court did not err in failing to compel the prosecutor to accept the stipulation.

■■■ 4. But serious and prejudicial error was committed during the penalty trial. During the guilt trial McFarland testified that he had committed five robberies with the defendant prior to the Gaslight robbery. This was offered to show a common plan or scheme (see *People* v. *Hill*, 66 Cal.2d 536, 556-557 [58 Cal.Rptr. 340, 426 P.2d 908]) and as circumstantial evidence that the defendant had committed the Gaslight robbery and murders. None of McFarland's testimony as to these five prior crimes was corroborated.

The jury found McClellan guilty of first degree murder as to both homicides, and the same jury tried the question of penalty. In the penalty trial the prosecutor questioned McFarland as follows:

"Q: . . . [Y]ou have previously testified [in the guilt trial] that you were with Mr. McClellan on six robberies, starting with the Family Hofbrau on December 20, 1966; is that correct?

"MR. KEENAN [defense counsel] : Objection, your Honor, no foundation. No corpus has been laid as to six prior robberies.

"THE COURT: The objection will be sustained. *Leading.* . . ." (Italics added.)

"Q: You have previously told us about some robberies that you committed with Mr. McClellan; is that right?

"A: Yes.

"MR. KEENAN: Same objection; immaterial to this phase of the case without a corpus.

"THE COURT: Overruled.

"MR. ENRIGHT: I believe you mentioned a January 31st robbery of the Robert's Room; do you recall that robbery?

"A: Yes.

"MR. KEENAN: Same objection, and a continuing objection regarding questions to any offense which the prosecution goes into for which there has not been a corpus introduced.

"THE COURT: . . . Overruled. The motion with respect to the continuing objection, I will permit that."

At this point, McFarland was examined in detail regarding the Robert's Room robbery. Subsequently, this testimony was corroborated by two witnesses who were present on the occasion of that robbery. One of them identified defendant as one of the robbers.

Defendant contends that McFarland's testimony during the guilt trial and the reference made to this testimony during the penalty trial constitute prejudicial error warranting a new trial on the issue of penalty in view of our decision in *People* v. *Varnum*, 66 Cal.2d 808, 815 [59 Cal.Rptr. 108, 427 P.2d 772].

It is settled law that during the guilt trial evidence of other crimes may be proved by a preponderance of the evidence, and that so far as proving other crimes by the evidence of an accomplice is concerned corroboration is not necessary (*People* v. *Rosoto*, 58 Cal.2d 304, 331 [23 Cal.Rptr. 779, 373 P.2d 867]). We reaffirm the doctrine of that case.

It is equally well settled that during the penalty trial the jury should be instructed that they may consider evidence of other crimes only when the commission of such crimes is proved beyond a reasonable doubt. (*People* v. *Varnum*, 70 Cal.2d 480, 485-486 [75 Cal.Rptr. 161, 450 P.2d 553]; *People* v. *Varnum*, 66 Cal.2d 808, 814-815 [59 Cal.Rptr. 108, 427 P.2d 772]; *People* v. *Hillery*, 65 Cal.2d 795, 805 [56 Cal.Rptr. 280, 423 P.2d 208]; *People* v. *Polk*, 63 Cal.2d 443, 450-451 [47 Cal.Rptr. 1, 406 P.2d 641]; *People* v. *Terry*, 61 Cal.2d 137, 148-149 [37 Cal.Rptr. 605, 390 P.2d 381].) Because of the possible great impact on the jury of the evidence of other crimes[2] we have held that on the penalty trial the testimony of an accomplice to such crimes must be corroborated. In *People* v. *Terry*, *supra*, 61 Cal.2d 137, as part of footnote 8, page 149, this court stated "As a corollary, defendant should not be subject to a finding of a jury that he committed prior crimes unless his commission of such prior crimes has been proven beyond a reasonable doubt." That this was a considered conclusion is demonstrated by the careful treatment given the problem in *People* v. *Polk*, *supra*, 63 Cal.2d 443. There at page 450 it was held "Defendants contend that since evidence of other crimes was introduced at the trial on the issue of penalty, an instruction that such crimes must be proved beyond a reasonable doubt should have been given. We agree with this contention. Generally, the standard of competency of the evidence at the trial on the issue of penalty is the same as the standard required at the trial on the issue of guilt. (*People* v. *Hamilton*, 60 Cal.2d 105, 129 [32 Cal.Rptr. 4, 383 P.2d 412].) Since evidence of other crimes, however, may

[2]Evidence of a prior criminal record is the strongest single factor that causes juries to impose the death penalty, according to a survey recently published by the Stanford Law Review. (21 Stan.L.Rev. 1297, 1326 et seq.)

have a particularly damaging impact on the jury's determination whether the defendant should be executed, we recognized in *People* v. *Terry,* 61 Cal.2d 137, 149, fn. 8 [37 Cal. Rptr. 605, 390 P.2d 381], that there should be an exception to the normal standard of proof at the trial on the issue of penalty (*People* v. *Purvis,* 56 Cal.2d 93, 95 [13 Cal.Rptr. 801, 362 P.2d 713]). Thus, even though at the trial on the issue of guilt the jury must be convinced only that it is more probable than not that the defendant committed other crimes before it may consider them (*People* v. *Albertson,* 23 Cal.2d 550, 579, 581 [145 P.2d 7]), at the trial on the issue of penalty they must be convinced beyond a reasonable doubt.''

The problem again received considered evaluation in *People* v. *Varnum, supra,* 66 Cal.2d 808. At page 814, this court reversed the penalty on the following reasoning: ''Error committed in the penalty phase of the trial, however, requires reversal. (*People* v. *Hines* (1964) 61 Cal.2d 164, 170 [37 Cal. Rptr. 622, 390 P.2d 398].) The prosecution encouraged the jury to aggravate defendant's punishment by evidence that he had committed other robberies shortly before those for which he was tried. This evidence consisted solely of the testimony of Thomas Hanks, who claimed to be defendant's accomplice in the earlier escapades. Penal Code section 1111 provides that 'A conviction cannot be had upon the testimony of an accomplice unless it be corroborated. . . .' Although no 'conviction' was involved at the trial on the issue of penalty, section 1111 cannot be construed to apply only to the trial on the issue of guilt, for it was enacted long before the adoption of separate trials of those issues.

''We have held that 'evidence of the earlier crime must meet the rules of admissibility governing proof of that crime or be otherwise properly admissible in the penalty proceeding.' (*People* v. *Purvis* (1961) 56 Cal.2d 93, 97 [13 Cal.Rptr. 801, 362 P.2d 713]; *People* v. *Hamilton* (1963) 60 Cal.2d 105, 129-131 [32 Cal.Rptr. 4, 383 P.2d 412]; *People* v. *Bentley* (1962) 58 Cal.2d 458, 460-461 [24 Cal.Rptr. 685, 374 P.2d 645].) Moreover, because evidence of other crimes 'may have a particularly damaging impact on the jury's determination whether the defendant should be executed . . .' they must be proved beyond a reasonable doubt before the jury may consider them. (*People* v. *Polk* (1965) 63 Cal.2d 443, 450 [47 Cal.Rptr. 1, 406 P.2d 641]; see also *People* v. *Terry* (1964) 61 Cal.2d 137, 149 [37 Cal.Rptr. 605, 390 P.2d 381].) Accordingly, at the trial on the issue of penalty the corpus delicti of

an earlier crime must be established before an uncorroborated extrajudicial confession can be admitted (*People* v. *Hamilton, supra*), and an earlier crime cannot be proved by hearsay (*People* v. *Purvis, supra*). For the same reasons Penal Code section 1111, prohibiting proof of an earlier crime by the uncorroborated testimony of an accomplice, also applies at the trial on the issue of penalty." (Footnote omitted.) Thus the specific problem here involved has been considered at length and in depth.

In the present case the evidence of the five prior crimes was admissible on the guilt trial without corroboration of McFarland, but on the penalty trial such evidence was inadmissible unless corroborated. Since normally, as here, the same jury determines both guilt and fixes the penalty, since normally it is stipulated that all the evidence at the guilt trial shall be considered on the penalty trial, and since here there was specific reference on the penalty trial to the priors testified to by McFarland, the defendant was entitled to a limiting instruction on the penalty trial to the effect that accomplice testimony of prior crimes shall not be considered unless corroborated and proved beyond a reasonable doubt.

The defendant did not request such an instruction but such request was not here required. It is settled law that the court must give basic instructions sua sponte. It must instruct on the general principles governing the case even though not requested by the parties. (*People* v. *Wade,* 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116], and cases cited.) Instructions must be given sua sponte as long as the instruction is "vital to a proper consideration of the evidence by the jury." (*People* v. *Putnam,* 20 Cal.2d 885, 890 [129 P.2d 367]; see also *People* v. *Jackson,* 59 Cal.2d 375, 380 [29 Cal. Rptr. 505, 379 P.2d 937].) That rule is particularly applicable here because the holding that a limiting instruction will prevent the error is new law and therefore no request or objection can be required. (*People* v. *Kitchens,* 46 Cal.2d 260, 263 [294 P.2d 17]; *People* v. *Hillery,* 62 Cal.2d 692, 711-712 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *De Santiago, ante,* pp. 18, 22-23 [76 Cal.Rptr. 809, 453 P.2d 353].)

The failure to so instruct on the penalty trial was obviously prejudicial and requires a reversal of the penalty judgment.

In order to assist the trial court on retrial of the issue of penalty, we discuss other allegations of error occurring during the penalty trial.

5. In the penalty trial, the court admitted the testi-

mony of the accomplice McFarland regarding two prior armed robberies committed by defendant alone. Defendant claims this was prejudicial error since this testimony was not corroborated to the extent required by Penal Code, section 1111.

A liquor store clerk testified regarding an attempted robbery of his place of work in late 1966. He never saw the robber and only heard him say "This is a holdup. Open the door." He never was asked to identify the defendant as the robber. McFarland later testified that the defendant had told him he robbed this store, mentioning several details that coincided with the account given by the clerk.

A retail food dealer testified to being robbed in late 1966 by a man who wore a nylon stocking over his head. He too was not asked to identify the defendant as the robber. McFarland later testified that the defendant had told him he robbed this market, mentioning several details that coincided with the account given by the dealer.

If Penal Code, section 1111, as applied in *People* v. *Varnum, supra,* 66 Cal.2d 808, 815, applies to McFarland's testimony regarding these two offenses which defendant allegedly committed alone, then the testimony of the other two witnesses was insufficient corroboration since that section provides that corroboration testimony must "tend to *connect the defendant* with the commission of the offense. . . . [It] is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (Italics added.) Here, only *McFarland's* testimony connected defendant with the offenses.

Thus, the question presented is whether section 1111 applies to the testimony of McFarland regarding the robberies defendant allegedly committed alone. If it does, then the admission of his testimony was prejudicial error in the penalty trial since the evidence regarding these two armed robberies might well have swayed the jury to impose capital punishment rather than life imprisonment on the defendant.

In *Varnum,* where this court held that accomplice testimony relating to prior offenses must be corroborated under section 1111 when offered in a penalty trial, the accomplice who testified was an accomplice of the defendant in both the offense for which the defendant was being sentenced and in the prior offenses regarding which he testified. (66 Cal.2d at pp. 813-814.) However, the court did not attach significance to this latter fact, and properly so. Penal Code, section 1111, and

other rules of evidence relating to the testimony of accomplices are predicated on the suspicion that an accomplice may be motivated to falsify his testimony in the hope of getting leniency for himself. (See *People* v. *Bowley*, 59 Cal.2d 855, 857-858 [31 Cal.Rptr. 471, 382 P.2d 591].) The untrustworthiness of an accomplice's testimony regarding prior crimes does not vary according to whether it concerns crimes in which he admittedly was involved; his motive to falsify certainly does not extend only to testimony concerning such crimes.

Accordingly, we hold that McFarland's testimony regarding the robberies defendant committed alone was objectionable under Penal Code, section 1111. Since we are ordering a retrial of the issue of penalty on another ground, we need not consider at this time whether in the first penalty trial defendant waived his right to object to this testimony by failing to object to it at any time during the penalty trial.

6. Defendant contends that in the penalty trial the prosecutor cross-examined defendant beyond the scope of the direct examination to the prejudice of defendant.

Defendant testified on his own behalf in the penalty trial regarding the details of the Gaslight robbery. After cross-examining defendant regarding certain details of the Gaslight robbery, the following exchange took place between the prosecutor and defendant:

"Q: You were just coming from robbing George's Liquor Store?

"MR. KEENAN [defense counsel]: Objection, your Honor, beyond the scope of the direct examination.

"COURT: Sustained.

"Q: You have been convicted of robbery, have you not, previously?

"A: That's correct, yes.

"Q: Once in Santa Ana and once in Orange County and once in Riverside; is that correct?

"A: Yes.

"Q: And this was the result—this was back in—the robberies had taken place in 1960; is that correct?

"A: Yes, sir.

"Q: *This was the result of your having committed over thirty robberies at that time?*

"MR. KEENAN: Objection, your Honor. There is no foundation laid for that statement." (Italics added.)

The trial court sustained the objection and admonished the jury to disregard the question. Defense counsel then moved

for a mistrial. The motion was taken under submission and later denied.

Having testified on his own behalf, defendant was, of course, subject to impeachment by proof of any prior felony *convictions.* (Evid. Code, § 788; *People* v. *Roberts,* 65 Cal.2d 514, 522 [55 Cal.Rptr. 412, 421 P.2d 420].) In response to the defendant's contention in *People* v. *Smith,* 63 Cal.2d 779 [48 Cal.Rptr. 382, 409 P.2d 222] (cert. denied 388 U.S. 913 [18 L.Ed.2d 1353, 87 S.Ct. 2119]), that the prosecutor had exceeded the permissible scope of cross-examination for impeachment purposes, the court stated: "A defendant who testifies in his own behalf may be impeached by proof he has suffered . . . prior convictions of felony. . . . While the courts will be zealous to insure that the prosecuting attorney is not permitted to delve into the details and circumstances of the prior crime [citations], simple questions designed to identify the particular felony involved in the conviction are allowable. Thus the name or nature of the crime may be asked [citations], and an inquiry into the place and date of the conviction is harmless as such details will appear in any event on the face of the record of judgment [citations]." (*Id.* at p. 790.)

The permissible scope of inquiry into a defendant's prior felony record includes the right to question the defendant as to the number of felonies of which he has been convicted and when they were committed. (*People* v. *Jones,* 216 Cal.App.2d 494 [31 Cal.Rptr. 79]; *People* v. *Miller,* 188 Cal. App.2d 156, 170 [10 Cal.Rptr. 326]; *People* v. *Renteria,* 181 Cal.App.2d 214, 218 [5 Cal.Rptr. 119, 78 A.L.R.2d 1275].)

From the cases holding that circumstances "surrounding" the offense (*People* v. *Braun,* 14 Cal.2d 1, 6 [92 P.2d 402].) and circumstances "comprising" the offense (*People* v. *David,* 12 Cal.2d 639, 646 [86 P.2d 811]) cannot be elicited from the witness, the general rule emerges that the witness can be asked about anything which would appear on the face of the record of judgment (see *People* v. *Smith, supra,* 63 Cal.2d at p. 790) since such record could itself be introduced into evidence for impeachment purposes.

In the present case, we are not told whether defendant was actually convicted of over 30 counts of robbery in 1960. Even if defendant in fact committed 30 robberies prior

to that time,[3] he could not be questioned about them for impeachment purposes unless he was *convicted* of them.[4]

It is extremely doubtful that defendant was so convicted. The information in the present case charged defendant with three prior convictions of first degree robbery, not 30 prior convictions. If in fact, defendant was convicted of 30 robberies, the prosecutor would have proved this at the trial. Thus it would seem that defendant's convictions of robberies in Santa Ana, Orange County, and Riverside did not involve 30 counts and that this was a matter of which the prosecutor must have been aware.

Even though in the penalty trial the prosecutor properly could have inquired in good faith whether defendant had committed 30 robberies which did not result in convictions, he never sought to do so, but only asked whether the convictions were the result of 30 robberies, a matter which is one of record. His failure to ask whether defendant had committed the robberies or to seek permission to ask indicates that this was a matter which he could not prove, certainly not "beyond a reasonable doubt" as required by *People* v. *Polk, supra,* 63 Cal.2d 443, 450-451.

The effect of the prosecutor's question, to which an objection was sustained on a technical ground, was no doubt harmful. It is natural for a jury to believe that the prosecutor is acting in good faith in asking questions because in the overwhelming majority of instances the prosecutor is acting in good faith. (Cf. *People* v. *Lo Cigno,* 193 Cal.App.2d 360, 388

---

[3]During the proceedings at the bench after the motion for mistrial, the prosecutor stated:

"[A]t the time of his conviction back in 1960, he told the Probation Officer that—he also confessed to all the police officers in the County, but he told the Probation Officer this was the result of thirty armed robberies that he went to prison in 1961."

[4]If defendant was actually *convicted* of over 30 robberies in 1960, then *People* v. *Purvis, supra,* 56 Cal.2d 93, 97, providing that in the penalty trial there may be " 'inquiry into relevant circumstances surrounding an earlier crime of which the defendant was *convicted*' " (italics added), would apply.

If defendant was *not* convicted of 30 counts of robbery in 1960, then the fact that in the penalty trial (where the prosecutor's debated question was asked) evidence of prior *crimes* can be shown whether or not these crimes resulted in convictions does not help the state's case. Such prior crimes must be proved beyond a reasonable doubt before they may be considered. (*People* v. *Polk, supra,* 63 Cal.2d 443, 450-451.) Here not even the corpus delicti was established; and without this, the prosecution could not have introduced the only evidence it apparently had of the 30 robberies (see fn. 3, *supra*), out-of-court admissions by the defendant. (See *People* v. *Hamilton,* 60 Cal.2d 105, 129 [32 Cal.Rptr. 4, 383 P.2d 412].)

[14 Cal.Rptr. 354].) When a technical objection, such as no proper foundation, is sustained to the question, there is a grave danger that the jury will assume that the answer to the question would have been affirmative had the prosecutor met the technical objection.

The question asked seems so inept that it raises questions as to the good faith of the prosecutor. If the prosecutor meant to ask whether defendant was convicted of 30 robberies, the question was an easy one to ask, and if the prosecutor believed that defendant was so convicted he would have called this matter to the court's attention. If, on the other hand, he was seeking to ask defendant whether he had committed 30 robberies for which he was not convicted, he did not ask that question or seek to prove the robberies by other evidence. Finally, if there were not 30 convictions, it does not appear how the question asked could have been proper cross-examination.

It is true that the prosecutor had possession of a report stating that defendant had committed 30 robberies. It is doubtful whether this is sufficient to warrant a conclusion that the prosecutor acted in good faith in view of the fact that he asked a question on the subject which was clearly objectionable and which, while limiting the defendant's opportunity to answer, must have had the effect of telling the jury that defendant had committed 30 robberies. Misconduct in this connection, if there was any, seems clearly prejudicial. The admonition of the trial court could not wipe away the obvious implication that defendant had committed 30 robberies. This should not occur in the retrial.

▮ The question about "coming from robbing George's Liquor Store" appears to have been within the proper scope of cross-examination. ▮ Cross-examination, which is limited to "[matters] within the scope of the direct examination" [here the Gaslight robbery] by Evidence Code, section 773, "may be directed to the eliciting of any matter which may tend to overcome or qualify the effect of the testimony given . . . on direct examination." (*People* v. *Pike,* 58 Cal. 2d 70, 90 [22 Cal.Rptr. 664, 372 P.2d 656].) The cross-examination is not "confined to a mere categorical review of the matters, dates or times mentioned in the direct examination." (*Id.*) ▮ The question put to defendant regarding the earlier robbery appears to have been within the scope of the direct examination regarding the Gaslight robbery.

The other contentions raised are either patently without merit or involve matters unlikely to arise on retrial.

The judgment is reversed insofar as it relates to penalty. In all other respects it is affirmed. A new trial is ordered on the issue of penalty.

Traynor, C. J., Tobriner, J., and Sullivan, J., concurred.

MOSK, J.—I concur in the affirmance of defendant's guilt, but dissent to the reversal of penalty.

As will be seen, there are essentially two thrusts to my dissent. First, I take issue with reliance on what may be labeled the *Polk-Varnum* rule and, second, I am apprehensive about the pragmatic result of that rule:

The *Polk-Varnum* requirement that at the penalty phase of a bifurcated trial prior crimes must be proved beyond a reasonable doubt finds little support in law or reason, and can be rationalized only by an abbreviated reverence for stare decisis. The rule was devised in the fertile tradition of judicial creativity and in total disregard of a long line of prior cases to the contrary. I proceed, then, to chronicle the relatively brief but checkered history of *Polk-Varnum*.

Penal Code section 190.1, providing for admission at the penalty trial of "any facts in aggravation or mitigation of the penalty," was adopted in 1957. At the first opportunity thereafter, in 1959, this court, speaking unanimously through Justice Peters, used the following oft-cited language to enunciate the proper interpretation of that section: "It would appear that the new section embodies the broad, liberal rule on admission of evidence that has always existed where a defendant has pleaded guilty and the only issues being tried relate to the degree of the crime and the penalty to be imposed. In such cases wide leeway in the admission of evidence is permitted. [Citations.] If there are any limitations on the admission of such evidence, it is certainly the rule that if the evidence would have been admissible on the trial of the guilt issue, it is admissible on the trial aimed at fixing the penalty." (*People* v. *Jones* (1959) 52 Cal.2d 636, 647 [343 P.2d 577].)[1]

---

[1] In 1959 the following original language of section 190.1 was deleted as part of an amendment proposed by the State Bar: "On such further proceedings on the issue of penalty, any evidence concerning the commission of the crime admissible in the trial determining the guilt of the defendant may be admitted." However, it is clear from the statements of the State Bar itself and the subsequent pronouncements of this court that the deletion was simply a removal of superfluous language, not in-

Subsequent to *Jones,* provisions regarding evidence of prior crimes at the penalty phase of a bifurcated trial became firmly established and were consistently reaffirmed in numerous decisions of this court. Those rules, unmistakably evident to prosecutors, defense counsel and trial judges, consisted of two major propositions: (1) any evidence admissible at the guilt phase of the trial was admissible at the penalty phase, and (2) prior acts and other aggravating or mitigating circumstances need not be proved beyond a reasonable doubt—or even by a preponderance of the evidence—at the penalty phase. (*People* v. *Jones* (1959) *supra,* 52 Cal.2d 636; *People* v. *Purvis* (1961) 56 Cal.2d 93 [13 Cal.Rptr. 801, 362 P.2d 713]; *People* v. *Howk* (1961) 56 Cal.2d 687 [16 Cal.Rptr. 370, 365 P.2d 426]; *People* v. *Hamilton* (1963) 60 Cal.2d 105 [32 Cal.Rptr. 4, 383 P.2d 412]; *People* v. *Griffin* (1963) 60 Cal.2d 182 [32 Cal.Rptr. 24, 383 P.2d 432]; *People* v. *Hines* (1964) 61 Cal.2d 164 [37 Cal.Rptr. 622, 390 P.2d 398].)

Thus in *People* v. *Purvis, supra,* at pages 95-96, this court, speaking through Justice Traynor, held it would be error to instruct that facts at the penalty trial must be proved either beyond a reasonable doubt or by a preponderance of the evidence, as the jury "has absolute discretion" in its weighing and application of the evidence. (See *People* v. *Howk, supra;* *People* v. *Hines, supra;* cf. *In re Anderson* (1968) 69 Cal.2d 613, 621-625 [73 Cal.Rptr. 21, 447 P.2d 117].) A year later it was held in *People* v. *Bentley* (1962) 58 Cal.2d 458, 460-461 [24 Cal.Rptr. 685, 374 P.2d 645], that evidence of other crimes, as long as they were not established by inadmissible hearsay, could be received even though relating to escapades for which no conviction had been obtained. (See also *People* v. *Mitchell* (1966) 63 Cal.2d 805, 815 [48 Cal.Rptr. 371, 409 P.2d 211].)

Perhaps the ultimate holding, however, was that in *People* v. *Griffin* (1963) *supra,* 60 Cal.2d 182, reversed on other grounds (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], in which this court held that detailed evidence of a prior offense could be admitted at the penalty phase although the defendant had been *acquitted* of the crime in another court, on the rationale that an "acquittal is merely an adjudication that the proof at the prior proceeding was not sufficient to

tended to restrict admissibility in the penalty trial. (See Selected 1959 Code Legislation (1959) 34 State Bar J. 710; *People* v. *Terry* (1964) 61 Cal.2d 137, 143, fn. 1 [37 Cal.Rptr. 605, 390 P.2d 381].)

overcome all reasonable doubt of the guilt of the accused.'' (*Id.* at p. 191.)[2]

Again in 1963, in *People* v. *Hamilton,* 60 Cal.2d 105, 129 [32 Cal.Rptr. 4, 383 P.2d 412], this court (per Justice Peters) reiterated that guilt need not be proved beyond a reasonable doubt at the penalty trial (citing *Howk* and *Purvis* with approval), but if the court held that evidence was incompetent and therefore inadmissible at the guilt phase, it could not be admitted at the penalty phase. Thus because an admission could not be introduced at the guilt trial without independent proof of the corpus delicti (*People* v. *Cullen* (1951) 37 Cal.2d 614, 624 [234 P.2d 1]), the admission could not be introduced absent such independent proof at the penalty trial, for the reason that it remained incompetent evidence. As indicated, *Hamilton* nevertheless reaffirmed the basic established rules as to penalty trials; yet it was later inexplicably to be cited as an authority for the abandonment of those rules.

Remarkably inauspicious was the initial incursion into the previously unquestioned ground rules regarding burden of proof, although the foray was subsequently magnified far out of proportion. In *People* v. *Terry* (1964) *supra,* 61 Cal.2d 137, 149, this court held that a mere information, by itself, could not be introduced at the penalty trial to prove commission of a prior crime, just as an arrest, standing alone, would be inadmissible for that purpose (*People* v. *Hamilton* (1963) *supra,* 60 Cal.2d 105, 132). Both were merely hearsay as to the commission of the crime, and where the defendant ultimately pleaded guilty to a lesser offense ''the use of incidents in the preliminary stages of the criminal process as evidence to prove that a defendant has committed an alleged criminal act becomes too prejudicial when weighed against its probative value.'' (*People* v. *Terry, supra,* at p. 149.) In other words, the evidence there was both incompetent (as hearsay) and irrelevant (having relatively little probative value), and did

---

[2]Even Justice Peters, who alone dissented, conceded that section 190.1 must be interpreted ''very liberally'' and that ''it is proper to inquire into all facets of the character of defendant and to show the jury just what kind of man he is.'' Justice Peters suggested it would be appropriate for the prosecution to introduce evidence that defendant had been previously charged with a crime and acquitted, for that ''is part of his background and history.'' (*Id.* at p. 195.) In fact, his only objection was to the prosecution's retrying the defendant de novo on the prior charge, by eyewitness testimony, especially since the state was in a position to bring in witnesses and other ''detailed evidence'' of the prior crime while the defendant, like most in his situation, lacked the resources to do so. Yet the *Polk-Varnum* rule seems to demand a virtually complete retrial of prior offenses.

not meet the minimal standards now codified in Evidence Code section 352.[3] While the foregoing occurred in the penalty trial, it cannot be doubted that a similar objection would apply equally to introduction of such evidence at the guilt trial. The court thus in that context correctly cited, in footnote 8, the *Hamilton* rule that the "same safeguards" must be applied in the penalty phase as protect the defendant in the guilt phase.

Unfortunately, however, the *Terry* court gratuitously added another sentence of unadulterated dictum to footnote 8, and this has been a source of obfuscation and error ever since. The court restated the *Hamilton* holding as to confessions lacking a corpus delicti, and continued: "As a corollary, defendant should not be subject to a finding of a jury that he committed prior crimes unless his commission of such prior crimes has been proven beyond a reasonable doubt." The raison d'etre of this cryptic sentence has eluded both courts and commentators, and apparently continues to do so. (See Comment (1964) 52 Cal.L.Rev. 386, 397 fn. 69.)

The only consistent interpretation of the footnote is that, given a situation in which only a conviction beyond a reasonable doubt would justify the introduction of "preliminary stages" of the criminal process at the guilt phase—as the *Terry* court appears to indicate—this "same safeguard" applies also in the penalty phase. If, however, that so-called "corollary" to *Hamilton* requires that prior crimes must always be proved beyond a reasonable doubt in a penalty trial, though not at a guilt trial, we have a classic non sequitur and clearly erroneous dictum which directly contradicts statements of the established principles set out not only in previous cases, but also in the *Terry* opinion itself and in its companion case, *People* v. *Hines* (1964) *supra*, 61 Cal.2d 164, 173.

At the outset of its discussion of the penalty trial, the *Terry* court reviewed the applicable principles, outlining the "necessarily broad" range of inquiry and the "broad, liberal rules on admission of evidence" in this area. (61 Cal.2d at p. 143.) In footnotes 1 through 3 the court favorably cited, among others, the *Jones, Purvis, Griffin,* and *Bentley* cases,

[3]Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

and substantially reiterated their holdings. Therefore the *Terry* court was under no illusion as to the established rules, and it made no overt effort to discard precedent. Nor is there any hint the court erroneously believed that a reasonable doubt standard was required for proof of prior crimes at the guilt phase, and thus the "same safeguard" had to be applied at the penalty trial. (*People* v. *Rosoto* (1962) 58 Cal.2d 304, 331 [23 Cal.Rptr. 779, 373 P.2d 867]; *People* v. *Lisenba* (1939) 14 Cal.2d 403, 429-432 [94 P.2d 569].) What is undeniable is that the enigmatic reference in footnote 8 to a reasonable doubt standard, particularly in view of the citation, in the same opinion, of cases holding directly to the contrary, provided a shaky foundation indeed for the edifice soon thereafter to be built upon it.

The fortuitous footnote in *Terry* inspired four justices of the court in *People* v. *Polk* (1965) 63 Cal.2d 443, 450 [47 Cal.Rptr. 1, 406 P.2d 641], to totally abandon all precedent and to categorically assert: "Since evidence of other crimes . . . may have a particularly damaging impact on the jury's determination whether the defendant should be executed, we recognized in *People* v. *Terry* . . . that there should be an exception to the normal standard of proof at the trial on the issue of penalty (*People* v. *Purvis* . . .)." The uncontrovertible fact is that the court had recognized no such principle in *Purvis* or in *Terry*, primarily because such a proposition was then—and still is—precedentially barren.[4] With this mythical authority to guide it, the *Polk* court enunciated for the first time a reasonable doubt rule for other crimes in penalty proceedings, pausing neither to justify its adoption nor to recognize the existence of consistent authority to the contrary. Thus we see the genesis of an evidentiary quagmire. Two years later *People* v. *Varnum* (1967) 66 Cal.2d 808 [59 Cal.Rptr. 108, 427 P.2d 772], gave the rule a stamp of venerable authenticity by reference to both *Polk* and *Terry*. Now in this case the majority gratuitously add still another to

---

[4]It should be noted here that the basic factual premise behind this statement—i.e., that evidence of prior crimes is more damaging to a defendant than any other evidence which might be adduced at the penalty trial—is at best questionable. Yet the following is apparently the current law of this state: prior crimes must be proved beyond a reasonable doubt (*Polk-Varnum*), but all other facts in aggravation or mitigation of penalty—whether more or less "damaging" than proof of prior crimes—carry either no burden of proof at all (*Hines, Terry*) or at most the "same safeguard" of guilt phase preponderance of the evidence (*Hamilton, Polk*). I am not the first to be puzzled by this curious anomaly. (See, e.g., Comment (1964) 52 Cal.L.Rev. 386, 403.)

what I must assume will eventually be a formidable list of citations.

I have not recited an exegesis of the *Polk-Varnum* doctrine in a spirit of misoneism or simply to document the origins of a judicially adopted rule of evidence. This is not, of course, the first time such a creative process has occurred, nor will it be the last. My concern arises because the new rule[5] which has been embraced unquestioningly by the majority is anomalous and contrary to the legislative intent expressed in Penal Code section 190.1.

The majority concede, as they must, that *People* v. *Rosoto* (1962) *supra*, 58 Cal.2d 304, 331, is prevailing law, and that "during the guilt trial evidence of other crimes may be proved by a preponderance of the evidence, and that so far as proving other crimes by the evidence of an accomplice is concerned corroboration is not necessary." But they fail to see the Legislature clearly intended that the admission of evidence at the penalty phase be *freer* than at the guilt phase (*People* v. *Jones* (1959) *supra*, 52 Cal.2d 636), and at most subject to the "same safeguards" of the guilt trial as to competency and relevancy (*People* v. *Terry* (1964) *supra*, 61 Cal.2d 137). Since the jury in the penalty phase of a bifurcated trial is not considering the fate of a defendant presumed to be innocent—he has by then been found guilty of first degree murder—logic and the provisions of section 190.1 dictate that the rules of evidence be less, not more, strict for the penalty trial. A majority of this court have inexplicably altered the legislative plan by concluding without authority or empirical foundation that evidence of prior crimes is not only more prejudicial than other evidence, but is more damaging when it may sway the jury between the two types of available punishment than when it may sway jurors between guilt and innocence. I submit that even had the Legislature not spoken to the contrary, there is far more reason to limit strictly the admission of evidence at the guilt phase, where both life and freedom hang in the balance for a presumptively innocent defendant, than at the penalty phase, after freedom has already been lost by a guilty felon. A rule that imposes stricter evidentiary standards at the post-conviction penalty

---

[5] I find it of more than casual significance that five years later, the majority still deem *Terry* dictum to be *new law*, and thus under the doctrine of *People* v. *Kitchens* (1956) 46 Cal.2d 260 [294 P.2d 17], and *People* v. *De Santiago* (1969) *ante*, p. 18 [76 Cal.Rptr. 809, 453 P.2d 353], the defense was required to make no objections and the trial court was required sua sponte to give limiting instructions.

proceeding than at the crucial guilt trial boggles the judicial mind.

For efficient trial procedure, trial courts and counsel are entitled to know how prior crimes are to be established at the penalty trial; the majority offer little assistance. Certainly a certified record of conviction will suffice. But what of proof by, for example, eyewitness testimony (*People* v. *Bentley* (1962) *supra,* 58 Cal.2d 458) or confession following independent proof of the corpus delicti (*People* v. *Hamilton* (1963) *supra,* 60 Cal.2d 105) or testimony by an accomplice, as in this case? It is clear that the *Terry* opinion, whatever else it intended, did not purport to exclude all evidence of prior crimes except formal convictions, a position which "would deny relevant sentencing information to the jury" and create "a fundamental change in the scope of evidence permitted." (Comment (1964) 52 Cal.L.Rev. 386, 397, and fn. 69.) As said in *People* v. *Mitchell* (1966) *supra,* 63 Cal.2d 805, 815-816, "There is no requirement that a defendant must have been convicted in order to introduce evidence of other criminal conduct during the penalty phase [citing *Griffin* and *Jones*]."

The inevitable next question is: Who will decide whether the prosecution has sustained its burden of proof as to prior crimes? It is apparently contemplated that the jury will make this determination after hearing all the evidence, except where, as in the instant case, the court makes the evaluation as a matter of law.[6] Where the evidence thus presented leaves any reasonable doubt of guilt of the prior crimes in the minds of the jurors, they will be instructed to disregard the testimony entirely in considering the penalty. In the not uncommon instances under *Polk-Varnum* in which the identical evidence of prior offenses has previously been presented at the guilt phase, as in this case, the jury will be expected to thoughtfully consider the evidence substantively in reaching a verdict on guilt or innocence, and then to erase that same testimony from their minds in determining penalty. This requirement suggests feats of mental legerdemain far more difficult than we have a right to expect of a jury.

We cannot overlook the serious pragmatic effect of the *Polk-Varnum* rule on the introduction of evidence of prior crimes at the penalty stage of a bifurcated trial. By requiring a

---

[6]*Polk* states that the court must *instruct the jury* that "they must be convinced [of prior crimes] beyond a reasonable doubt." (63 Cal.2d at p. 451; see also *People* v. *Hillery* (1967) 65 Cal.2d 795, 805 [56 Cal.Rptr. 280, 423 P.2d 208]; *People* v. *Mitchell* (1966) *supra,* 63 Cal.2d 805, 817.)

higher degree of proof at the penalty trial than at the guilt trial, with all the time, effort, and resources this demands of both prosecution and defense,[7] we discourage entirely the use of such evidence in determining penalty. This is contrary to the legislative intent, as often recognized by this court, that proof of prior crimes is a proper factor to be considered by the jury in the penalty trial. (E.g., *People* v. *Mitchell.* (1966) *supra*, 63 Cal.2d 805, 815; *People* v. *Robillard* (1960) 55 Cal.2d 88, 100 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Jones* (1959) *supra*, 52 Cal.2d 636, 647.)

In the case at hand, the admission of uncorroborated accomplice testimony as to other offenses in the guilt phase of a trial, while denying it in the penalty phase, purportedly pursuant to Penal Code section 1111,[8] dramatically illustrates the myopic character of *Polk-Varnum*. For it should be clearly seen as this court has heretofore unmistakably held, that section 1111 applies to convictions only; indeed, no other interpretation of the statutory language is plausible. (*People* v. *McRae* (1947) 31 Cal.2d 184, 187 [187 P.2d 741].)

I am convinced the original pre-*Polk* line of cases interpreting section 190.1 is sound. I would overrule *Polk* and *Varnum*. I would also set the record straight on *Terry*, although all that need be done is to philosophize about the havoc that can be wrought by a lone sentence improvidently added to an obscure footnote.

On the other hand, if the majority are determined to assert this new evidentiary concept, they should reconsider the implications of their haphazard method of reconciling the new penalty standard with those imposed at the guilt trial. They should at the very least forthrightly overrule the long line of pre-*Polk* authorities. In the words of Francis Bacon: "If it be that previous decisions must be rescinded, at least let them be interred with honour." In lieu thereof, this eulogy in dissent must suffice.

McComb, J., and Burke, J., concurred.

Respondent's petition for a rehearing was denied September 17, 1969. McComb, J., and Burke, J., were of the opinion that the petition should be granted.

---

[7] In such a situation the defense easily can be placed in a more difficult position than the prosecution (see fn. 2, *ante*).

[8] Penal Code section 1111 provides, in part: "A *conviction* cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense. . . ." (Italics added.)