Filed 2/19/16  P. v. Hinojos CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B262317 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA133739) |
| v. | |
| DAVID HINOJOS, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. Kelvin D. Filer, Judge.  Affirmed.

Doreen B. Boxer and Dee Hayashi, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant David Hinojos was charged by information with assault with a firearm (Pen. Code, § 245, subd. (a)(2); count 1), being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 2), and shooting at an occupied motor vehicle (§ 246; count 3), with prior prison term and prior conviction allegations, as well as a firearm enhancement (§§ 1170, subds. (h) & (h)(3), 1170.12, 667, subd. (a)(1), 667.5, subd. (b), 12022.5, subds. (a), (d)). He was convicted by jury of counts 1 and 2, the firearm enhancement was found true, and defendant admitted the prior conviction allegations; count 3 was dismissed after the jury was unable to reach a verdict. On appeal, defendant contends the trial court abused its discretion when it admitted a photograph of his gang tattoo, and that the error also had the consequence of denying him a fair trial. Defendant also contends the court erroneously and prejudicially denied his request for a limiting instruction to guide the jury's consideration of the photograph. Finding no merit in either of these contentions, we affirm the judgment of conviction.

## FACTS

On the afternoon of June 10, 2014, N.W. drove to a Lynwood shopping center to pick up a T-shirt. As she was looking for a parking space, a white Toyota Corolla pulled away from the curb into traffic and nearly struck her vehicle. The car's female driver was arguing with her male passenger, defendant.[1] In shock, N.W. stopped her car. Defendant got out of the Corolla and walked up to N.W.'s open passenger window. Defendant yelled at N.W., calling her a b----. He had "extremely short" hair, and was wearing a white T-shirt and blue jeans. Defendant got back into the Corolla and it drove away.

N.W. followed the white Corolla for a short distance instead of completing her errand. She called 911 and tried to read the license plate number to the operator. The Corolla stopped, and N.W. stopped as well. Defendant got out of the passenger side of

---

[1] N.W. was unable to identify defendant at trial. She started crying when she looked at defendant and was asked to identify him. She denied having any concerns about testifying.

2

the Corolla and ran toward the driveway of a nearby home.  Defendant signaled someone over to him, who came out of the house and handed defendant a gun.  Defendant aimed the gun at N.W., and started firing at her.  N.W. reversed her car and drove away.  N.W. was still on the phone with the 911 operator when she drove away, and related what had happened.

On June 10, 2014, A.Q., a security guard for the Lynwood shopping center, heard several gun shots.  He left the guard shack and saw a Hispanic male, in a white shirt, speaking to someone in a car before the car sped away.[2]  The man then ran into a pink house.

Sheriff's deputies met with N.W. under a nearby freeway overpass.  N.W. described defendant to Deputy Oscar Rodriguez as a male Hispanic, in his 30's, five feet eight inches tall, with a thin build, very short hair, with a tattoo on the back of his head, wearing a white T-shirt and light blue jeans.  N.W. was unable to describe the tattoo.  Deputy Rodriguez put out a crime broadcast describing the defendant and the area where the shooting had occurred.

Deputy Carlos Mejia responded to the radio broadcast.  When he arrived on the scene where the shooting occurred, he saw A.Q. and asked him if he had seen anything.  A.Q. reported that he had heard gunshots, and that he saw a male Hispanic pointing a gun, and then running to a white car and putting a gun in the car.  The car drove away and the man went inside a pink house.  Deputy Mejia found three .25-caliber shell casings near the area where A.Q. saw the shooter.  The pink house identified by A.Q. was "contained" by deputies and defendant was detained.

Officer Rodriguez and his partner drove N.W. to where defendant was being detained to conduct a field identification.  They read a field identification admonishment to N.W., and advised her that she did not need to identify the person if she was not sure.  N.W. immediately identified defendant as the person who shot at her.

---

[2]    Later testimony by another witness indicates that the car A.Q. saw defendant approach after the shooting was the white Corolla.

Defendant was arrested, and a gunshot residue test of his hands and arms was positive for gunshot residue. The investigation also revealed that defendant's sister drove a white Toyota Corolla.

N.W. was later shown a photographic array that did not include a photograph of defendant, and she confirmed the shooter's picture was not in the array. When shown a video of defendant's sister's car, N.W. identified it as the one involved in the incident. She also identified two women in a photographic array as resembling the female driver involved in the incident, one of whom was defendant's sister.

## DISCUSSION

Defendant contends the trial court erred when it admitted a photograph of his tattoo into evidence, and that the trial court erroneously failed to give a limiting instruction on the use of the evidence after he requested one.

### 1. Relevant Facts

After jury selection, defendant made an Evidence Code section 402 motion to exclude a photograph of defendant's tattoo that was taken at the time of his arrest. Counsel reasoned the "CV3" tattoo would "introduc[e] gang issues" into the trial, and that evidence of the specifics of the tattoo "is far more prejudicial than probative." The prosecutor argued that the tattoo was probative of identification, based on N.W.'s statements to deputies that her assailant had a tattoo on the back of his head. The court agreed the evidence was relevant to the reliability of N.W.'s identification of defendant. The court concluded, however, that there would be no evidence or explanation of the meaning of "CV3" and that witnesses should be admonished to not mention any gang issues or connection to the jury.

The court went on the explain, "I don't think that necessarily will be prejudicial because we'll tell the jurors they can't consider it as gang evidence or anything along those lines. [¶] At the end of trial if you think the jury needs to be reminded of that and you want to propose a jury instruction, I'll consider it at that time. However, I think the safest way is to say, is this the tattoo, and leave it at that."

4

The prosecutor wanted to use the photograph to refresh N.W.'s recollection. Defense counsel suggested taking N.W. on voir dire outside the presence of the jury to see if she recognized the tattoo. If she recognized it, counsel was willing to enter into a stipulation that defendant had a tattoo on the back of his head. Defense counsel objected to the photograph being published to the jury, reasoning, "either she recognizes it or doesn't. What it actually looks like is not probative to the jury." The court found the evidence was relevant, and that the probative value outweighed any prejudice. The court also explained, "I can't make [the prosecutor] stipulate."

At trial, when N.W. testified, the prosecutor showed her the photograph of defendant's tattoo, and asked if it refreshed her recollection as to whether she saw a tattoo on the shooter's head. She remembered seeing the *photograph*, but it did not refresh her recollection. She could not recall whether she told Officer Rodriguez that defendant had a tattoo on his head. Later in the trial, a deputy identified the photograph as a picture of defendant's head.

Shortly before the close of evidence, the court finalized the instructions to be given to the jury. The court stated on the record, "We have gone through the jury instructions, and as to the instructions proposed everybody is in agreement." The parties and court went on to discuss various instructions, none of which was a limiting instruction concerning the tattoo evidence. After the parties concluded their discussion, the court asked, "are there any instructions the court intends on giving that the defense wants to pose any additional objection to or are there any instructions that the defense is requesting that the court has refused to give?" Defense counsel did not object to any instruction or identify any instruction the defense had requested that the court refused to give.

Immediately following this discussion, Juror No. 8 asked to be excused because the picture of the tattoo made her "very uncomfortable." She said she was a victim of a crime where "several tattoos [were] involved." She was "scared" and said she would enter a "not guilty" verdict. Accordingly, she was excused. The juror did *not* indicate that she understood the tattoo to be gang related.

5

Defense counsel made a motion to dismiss, based on the issues raised by the juror, arguing that the tattoo evidence was prejudicial, and Juror No. 8 "just proved that point," reasoning that the juror's concerns made it clear that the gang significance of the tattoo was readily apparent. The court denied the motion, concluding "I don't think there's any prejudice . . . everybody . . . has tattoos now. It's not unusual. There's been no reference to what type of tattoo it is. No evidence as to what the tattoo says. All they know is he has a tattoo on his head."

Defense counsel then stated, "That does raise a question. Should the jury instruction for evidence is presented for a limited purpose be appropriate as to that exhibit?" The court responded, "I think that would . . . draw attention to it. I don't think it's going to impact them in carrying out their responsibilities as jurors. I think giving that instruction would call attention to it." Counsel did not argue further, and when the court asked if there was "anything else," defense counsel raised no further issues or objections.

## 2. Tattoo Evidence

" 'Only relevant evidence is admissible [citations], and all relevant evidence is admissible unless excluded under the federal or California Constitution or by statute. [Citations.] Relevant evidence is defined in Evidence Code section 210 as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." The test of relevance is whether the evidence tends " 'logically, naturally, and by reasonable inference' to establish material facts such as identity, intent, or motive. [Citations.]" [Citation.] The trial court has broad discretion in determining the relevance of evidence [citations] but lacks discretion to admit irrelevant evidence. [Citations.]' [Citation.]" (*People v. Heard* (2003) 31 Cal.4th 946, 972-973.)

The trial court's discretion to admit evidence is subject to the requirements of Evidence Code section 352. Relevant evidence may be excluded if its probative value is outweighed by a danger of undue prejudice, is merely cumulative to other evidence, or will consume an undue amount of time. (*People v. Branch* (2001) 91 Cal.App.4th 274,

281-282.)  A trial court's ruling to admit or exclude evidence is reviewed for abuse of discretion.  (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1373.)

Defendant contends that gang evidence is highly inflammatory and prejudicial, and should be carefully scrutinized because of the impact it may have on the jury.  (See *People v. Albarran* (2007) 149 Cal.App.4th 214, 223.)  Defendant has taken a logical leap with this argument.  The court specifically excluded any gang evidence.  There was no evidence from a gang expert or any lay witness to the effect that the tattoo on defendant's head was a gang tattoo.  Juror No. 8 was frightened by the tattoo because she had been the victim of a crime where "several tattoos [were] involved," but she did not say the perpetrator or perpetrators of the crime against her were gang members or that she believed defendant was a gang member.

Defendant also contends that a stipulation would have been just as effective in presenting the People's case, or that the court could have allowed a deputy to testify that defendant had a tattoo on the back of his head without describing its characteristics.  We disagree.  The unique and unusual nature and characteristics of the tattoo (CV3) were relevant to help the jury evaluate why N.W. did not remember what it looked it, and could not describe it to deputies.  (See, e.g., *People v. McClellan* (1969) 71 Cal.2d 793, 802 ["[T]here is a strong policy against depriving the state's case of its persuasiveness and forcefulness by forcing the prosecutor to accept stipulations that soften the impact of the evidence in its entirety."].)

On this record, we find no abuse of discretion.  Identification was the central issue in the case, and the tattoo was clearly relevant and probative of the identity of N.W.'s attacker.  There was nothing particularly inflammatory about the tattoo, and there was absolutely no evidence that the tattoo was gang related.  As the trial court correctly noted, tattoos have become commonplace and are not in themselves inflammatory. Accordingly, we also reject defendant's claim of constitutional error.

3.      **Limiting Instruction**

Defendant also contends the trial court erroneously refused his request for a limiting instruction to guide the jury's consideration of the tattoo evidence.  Respondent

7

contends that any claim of error has been forfeited by defendant's failure to request a limiting instruction. We agree with respondent.

The trial court generally has no duty to give a limiting instruction sua sponte; a limiting instruction must be requested by counsel. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1051.) Here, defense counsel did not propose to give a limiting instruction. Instead, counsel asked the court whether such an instruction might be warranted. Defense counsel's failure to propose a limiting instruction, and acquiescence to the court's conclusion that such an instruction would only draw the jury's attention to the issue, forfeits his claim of error on appeal. (Evid. Code, § 355 [trial court shall give limiting instruction "upon request"]; *People v. Valdez* (2012) 55 Cal.4th 82, 149 ["a defendant who fails to ask the trial court to give a limiting instruction may not raise the issue on appeal"]; *People v. Clark* (2011) 52 Cal.4th 856, 942 ["Because defendant failed to request a limiting instruction below, he has forfeited his claim that it was error for the court not to so instruct."].)

And, in any event, we find no possible prejudice. The evidence of defendant's guilt was overwhelming, and it is not reasonably probable that the jury would have reached a more favorable verdict had the jury been given a limiting instruction. It would not have promoted defendant's interests in having a fair trial for the court to tell the jury, which had heard no reference to gangs during the trial, that they could not consider the tattoo as evidence that defendant was a gang member. The obvious inference from such an instruction is that the tattoo was indeed a gang tattoo, but the defense did not want the jury to know or consider that. (See *People v. Dickey* (2005) 35 Cal.4th 884, 905.)

## DISPOSITION

The judgment is affirmed.


GRIMES, J.

WE CONCUR:

BIGELOW, P. J.                    RUBIN, J.


8