Filed 12/4/23  Peccia v. Guerrero CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAKE PECCIA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>DAVID GUERRERO et al.,<br><br>    Defendants and Respondents. | B316614<br><br>(Los Angeles County<br>Super. Ct. No. BP165601) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Paul T. Suzuki, Judge.  Affirmed.

Law Office of Cliff Dean Schneider and Cliff Dean Schneider for Plaintiff and Appellant.

Lagerlof, Steven C. Valerio, Kaila M. Bradley, and Robert Bailey for Defendants and Respondents.

————————————

Adolph and Martha Guerrero established a revocable living trust (the Trust). After Martha died, Adolph amended the Trust to disinherit their daughter, Victoria Guerrero.[1] Following Adolph's death, two of Victoria's children, appellant Jake Peccia and his sister, Karina Guerrero, filed a petition in probate court claiming Adolph lacked testamentary capacity when he amended the Trust. They also alleged the amendment was the result of the undue influence of Adolph's sons, Daniel and David Guerrero. The probate court ultimately ruled in favor of Peccia and Karina on one of the 10 claims asserted in their petition. The court ruled in respondents' favor on the remaining claims.

On appeal, Peccia contends the probate court erred by failing to award him his costs as the prevailing party and by failing to allow him to recall a witness for impeachment purposes. We find no error and affirm.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Guerrero Family Trust*

Adolph and Martha, a married couple, had three children: Daniel, David, and Victoria. Victoria had three children of her own: Peccia, Karina, and Michelle.

Adolph and Martha executed the Trust in 1997. Under the terms of the Trust, upon the death of either trustor, the Trust estate was to be divided into two separate trusts. The Trust provided that "upon the death of the first trustor to die, [the

---

[1] Several of the parties and relatives share the last name Guerrero, and others the last name Peccia. For the sake of clarity, and with the exception of appellant Peccia, we at times refer to these individuals by their first names only. No disrespect is intended.

[2] Karina is not a party to this appeal.

2

separate trust holding the deceased trustor's share of the estate] shall be irrevocable and cannot be amended by the surviving trustor." Daniel, David, and Victoria would receive equal shares of the Trust's assets following Adolph's and Martha's deaths.

Martha died in 2009. At that time, the separate trust attributable to her portion of the Trust estate became irrevocable. However, the Trust estate was not formally divided into two separate trusts within six months of her death, as required by the Trust.

In February 2012, Adolph executed the First Restated Family Trust (the Restated Trust). The Restated Trust made the Trust estate distributable in two equal shares to Daniel and David, omitting Victoria.

Victoria died in June 2012.

Adolph died in August 2014. Shortly thereafter, Peccia discovered that the Restated Trust omitted Victoria as a beneficiary, thus precluding him from inheriting anything from his grandparents.

### Probate Court Proceedings

In 2015, Peccia and Karina (collectively petitioners) filed a petition in probate court naming as respondents their uncles, Daniel and David (collectively respondents). The petition alleged that Adolph was diagnosed with Alzheimer's disease and dementia in 2008. The petition further alleged respondents took advantage of Adolph's illnesses and convinced him to disinherit Victoria by executing the Restated Trust.

In 2017, petitioners filed the operative second amended petition asking the court to: (1) invalidate the Trust amendment

3

for lack of capacity, Probate Code sections 810–812;[3] (2) invalidate the Trust amendment because of undue influence, section 86, Welfare and Institutions Code section 15610.70; (3) determine the validity of the Trust provisions, section 17200; (4) impose liability on respondents for financial elder abuse, Welfare and Institutions Code sections 15610.30, 15657.5, and 15657.6, Civil Code section 3294; (5) appoint Peccia as a successor trustee, section 15660; (6) award attorney fees and costs under the common fund doctrine; (7) compel return of the Trust property, section 850; (8) impose liability for aiding and abetting; (9) impose liability for conspiracy to invalidate the Trust; and (10) deem Daniel, David, and Michelle Peccia to have predeceased Adolph, section 259.[4]

In December 2017, petitioners filed a motion for partial judgment on the pleadings as to their third cause of action regarding Martha's irrevocable subtrust. The probate court granted the motion, finding that Martha's subtrust became irrevocable on her death, which predated Adolph's amendment. Adolph's restatement of the Trust could therefore apply only to his share of the Trust estate.

In August 2021, the probate court conducted a bench trial on the remaining claims, which affected Adolph's subtrust only.

---

[3]    Subsequent undesignated statutory references are to the Probate Code.

[4]    The second amended petition named two additional respondents: Michelle Peccia, petitioners' sister, and her father, Michael Peccia. The petition's eighth and ninth causes of action were asserted against Michelle and Michael. Neither participated in the trial at issue in this case, and neither is a party to this appeal.

4

The two contested issues at trial were (1) whether Adolph lacked the capacity to execute the Restated Trust, and (2) whether respondents unduly influenced Adolph to execute the Restated Trust.  The court found in favor of respondents on both issues.  It issued a judgment validating the Restated Trust, denied the petition's first four causes of action with prejudice, and ordered petitioners "to take nothing from the causes of action pled."  The court granted the petition's request for attorney fees and costs to be paid under the common fund doctrine, ordering that "[e]ach beneficiary taking under Victoria Guerrero's share (specifically from Martha Guerrero['s] Trust), shall pay attorney fees and costs proportionately out of the share of the common fund owed to each of them."[5]

Finally, the probate court ordered the parties to bear their own attorney fees and costs, finding that while petitioners were the prevailing parties on their partial motion for judgment on the pleadings related to Martha's subtrust, respondents were the prevailing parties at trial on the issues related to Adolph's subtrust.

Peccia timely appealed the probate court's judgment.

## DISCUSSION

I.     **The Probate Court Did Not Err In Ordering the Parties to Bear Their Own Costs**

Peccia contends the probate court erred in failing to award him costs as the prevailing party under Code of Civil Procedure section 1032, subdivision (b).  We reject the argument.

---

[5]     The trial court did not specifically address the petition's remaining claims, several of which were derivative of the first through fourth causes of action.  Peccia raises no issue on appeal specific to those individual causes of action.

Under section 1000, subdivision (a), the "rules of practice applicable to civil actions" apply to proceedings under the Probate Code, "[e]xcept to the extent that this code provides applicable rules." Section 1002 provides: "Unless it is otherwise provided by this code or by rules adopted by the Judicial Council, either the superior court or the court on appeal may, in its discretion, order costs to be paid by any party to the proceedings, or out of the assets of the estate, as justice may require."

As explained in *Hollaway v. Edwards* (1998) 68 Cal.App.4th 94, "although Code of Civil Procedure section 1032, subdivision (b) entitles a prevailing party in ordinary civil litigation to costs as a matter of right, the probate court retains discretion to decide not only *whether* costs should be paid, but also, if they are awarded, who will pay and who will recover them." (*Id.* at p. 99; see also *Estate of McCormack* (1969) 2 Cal.App.3d 492, 499 [costs in probate proceeding not awarded as matter of right but only within court's discretion].) The Probate Code's specific rule regarding costs applies here, not Code of Civil Procedure section 1032, subdivision (b). (See *DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1147 [Code of Civil Procedure section 1032 is only a default rule; its definition of prevailing party does not control when another statute provides for different means of allocating costs].) We review the probate court's costs determination for an abuse of discretion. (*Estate of Denman* (1979) 94 Cal.App.3d 289, 291–292.)

The probate court ordered the parties to bear their own costs on the ground that each side partially prevailed. The court explained that while petitioners prevailed on their argument regarding Martha's subtrust, respondents succeeded at trial on

the claims related to Adolph's subtrust.  Under these circumstances, the probate court did not abuse its discretion in awarding costs under section 1002.[6]

## II.  The Probate Court Did Not Abuse Its Discretion by Denying Peccia's Request to Recall a Witness

Peccia argues the probate court deprived him of a fair trial in violation of his due process rights when it denied his request to recall Daniel as a witness.  We disagree.

### A. Background

Peccia's counsel called Daniel as an adverse witness at trial, pursuant to Evidence Code section 776.  After Peccia's counsel finished Daniel's direct examination, respondents' counsel asked to combine his direct and cross-examination of Daniel, "so we don't have to re-call [*sic*] Mr. Guerrero."  The court approved the request.

When respondents' counsel finished examining Daniel, the court inquired of Peccia's counsel, "Any redirect under 776?"  Peccia's counsel proceeded with redirect.  During redirect, the probate court overruled one of respondents' objections on the ground that "this is [a] cross-examination."  At the end of Peccia's examination of Daniel, the court asked if there were any further

---

[6]     Even if Code of Civil Procedure section 1032 applied in this case, we would find Peccia has failed to establish error on appeal. Peccia cites no legal authority to support his assertion that the court's order in his favor as to Martha's share of the Trust estate constituted "net monetary" relief to him, rather than the recovery of "other than monetary relief," which would allow the court to award costs in its discretion.  (Code Civ. Proc., § 1032, subd. (a)(4); *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 [appellant must support contentions with citations to authority]; Cal. Rules of Court, rule 8.204(a)(1)(C).)

questions. Peccia's counsel asked: "[W]ould I be able to call the witness back for a limited purpose later on?" The court responded, "It's up to you. It's subject to whatever objection, I guess." Counsel then replied, "At this time, no further questions." The court excused Daniel "for the moment."

Several days later, after Peccia excused his final witness and during the discussion of his exhibits, Peccia's counsel told the court, "Actually, hold on a second, I was going to call Daniel Guerrero again, but I was going to wait until other witnesses had been called." The court then inquired whether Peccia's counsel was resting his case, and counsel replied, "[I]t depends on whether I'll be able to call Daniel Guerrero subsequently." The trial court responded, "It depends on who [respondents] call." Respondents' counsel stated he had no plans to call Daniel as a witness because he had already testified. Respondents' counsel also contended it would be improper to recall Daniel as a witness unless there was a proffer to explain why Peccia's counsel was previously "unable to ask the questions that he is intending to ask." The probate court asked Peccia's counsel for an offer of proof as to why he wanted to reopen Daniel's testimony. Counsel responded he wanted "[t]o impeach some of [Daniel's] testimony."

Respondents' counsel objected under Evidence Code section 352. Counsel argued that Peccia had already cross-examined Daniel and reopening his testimony would allow the case to "drag on." The probate court reserved its ruling until it could review the portion of the transcript reflecting Peccia's counsel's question to the court about recalling Daniel.

After a break, the court read the relevant portion of the transcript into the record. The court then asked for respondents' position on Peccia calling Daniel as a "rebuttal" witness.

8

Respondents' counsel objected that Daniel was not a rebuttal witness, and Peccia's counsel already had "every opportunity to question" Daniel. Peccia's counsel replied that there had been "new testimony by subsequent witnesses that's now raised the opportunity for impeachment." He provided no further details.

The court denied Peccia's request to recall Daniel, explaining: "Here's my hesitancy: I think we could do this with almost any witness that might finish testifying, that you might find some subsequent information or inquiry or the attorneys might think that, oh, I should have asked that question. And if I were to allow rebuttal for every witness like that, the trial would just keep going on and on. [¶] So, I think [that] in the interest of [Evidence Code section] 352, I don't think I should open it up again. . . . [¶] . . . I'm going to sustain the objection." Peccia's counsel interjected, "Your honor, there are at least . . . 17 different points for impeachment." The court replied, "That's exactly why I do not want to open it up, because it sounds like you're going to open up a whole case again in terms of testimony . . . ." The probate court sustained respondents' objection to recalling Daniel.

**B. Peccia did not make an adequate offer of proof or otherwise establish a miscarriage of justice, as required for reversal under Evidence Code section 354**

Peccia asserts the probate court's order excluding Daniel's further testimony was reversible error. However, under Evidence Code section 354, "[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless . . . the error . . . resulted in a miscarriage of justice and it appears of record

9

that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means; [¶] (b) The rulings of the court made compliance with subdivision (a) futile; or [¶] (c) The evidence was sought by questions asked during cross-examination or recross-examination."

The "failure to make an adequate offer of proof in the court below ordinarily precludes consideration on appeal of an allegedly erroneous exclusion of evidence." (*Shaw v. County of Santa* Cruz (2008) 170 Cal.App.4th 229, 282.)  This is because an offer of proof is necessary to assess prejudice. (*People v. Anderson* (2001) 25 Cal.4th 543, 580 (*Anderson*).)  For example, in *Anderson*, trial counsel informed the court that a witness might be called to "impeach" another witness, but "did not offer to show *what* material impeachment [the witness] might provide." (*Id.* at p. 581.)  Our Supreme Court found the offer of proof "insufficient" and declined to reverse under Evidence Code section 354, "because, among other things, the reviewing court must know the substance of the excluded evidence in order to assess prejudice." (*Id.* at p. 580; see also *People v. Nieves* (2021) 11 Cal.5th 404, 433 ["We discern no error in the trial court's ruling 'when defendant made no offer of proof at trial explaining why the witness[es] should have been permitted to [testify]' "].)

Here, the probate court asked Peccia's counsel for an offer of proof, and counsel responded that Daniel's testimony would be used "to impeach some of his testimony."  Counsel later added that there had been "new testimony by subsequent witnesses that's now raised the opportunity for impeachment," and that there were "at least . . . 17 different points for impeachment."  As in *Anderson*, these general statements regarding impeachment

10

fail to convey what "material impeachment" testimony Daniel would have provided. (*Anderson, supra*, 25 Cal.4th at p. 581.) We cannot reverse the probate court's judgment without knowing what the excluded evidence would have conveyed, and thus how Peccia was prejudiced. Peccia has failed to establish how the exclusion of Daniel's further testimony resulted in a miscarriage of justice, either through an offer of proof or by explaining on appeal how he was prejudiced. (*Conservatorship of Farrant* (2021) 67 Cal.App.5th 370, 378–379; *Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 329.) Moreover, Peccia does not argue, and the record does not reflect, that any offer of proof would have been futile or that the excluded impeachment "evidence was sought by questions asked during cross-examination or recross-examination." (Evid. Code, § 354, subds. (b)–(c).)

Under Evidence Code section 354, there is no basis to reverse the judgment based on the exclusion of Daniel's impeachment or rebuttal testimony.

## C. The trial court did not abuse its discretion under Evidence Code section 352

Further, the trial court did not abuse its discretion in sustaining respondents' objection under Evidence Code section 352. (*People v. Pineda* (2022) 13 Cal.5th 186, 222.) Evidence Code section 352 affords the trial court discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time. In addition, "[a]fter a witness has been excused from giving further testimony in the action, he cannot be recalled without leave of the court. Leave may be granted or withheld in the court's discretion." (Evid. Code, § 778.)

The probate court implicitly found the probative value of Daniel's unknown "impeachment" testimony was outweighed by the probability that admitting the evidence would necessitate "undue consumption of time." We find no abuse of discretion given the lack of information as to probative value, as well as the court's awareness that Daniel had already testified on direct and re-direct, and he had already been cross-examined. The probate court could reasonably conclude that an opportunity for what would essentially be further cross-examination on numerous unspecified issues carried a high likelihood of undue consumption of time. (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1309 (*Espinoza*) [no error where trial court excluded witness due to undue consumption of time under Evidence Code section 352 where if witness were called, "[i]t would require the calling of other numerous witnesses in rebuttal"]; *People v. Renteria* (1960) 181 Cal.App.2d 214, 220–221 [rejecting claim of denial of fair trial and violation of due process where trial court refused to recall witness for impeachment purposes when witness had already testified and was subject to cross- and re-recross examination in case in chief, then testified again in rebuttal, and was cross-examined again].) Peccia has not established that the court " 'exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*Espinoza*, at p. 1310.)

Finally, we note that "[a] trial court has the inherent authority and responsibility to fairly and efficiently administer the judicial proceedings before it." (*California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 22.) This includes the authority to "take[ ] measures to expedite the proceeding" and the court "is vested

with discretion over the scope of rebuttal." (*Ibid*.) The probate court considered that Peccia had called Daniel to testify and conducted a redirect and cross-examination. At no point was Peccia's counsel's questioning of Daniel cut short. Rather, counsel chose to excuse Daniel for strategic reasons.

Peccia argues counsel only excused Daniel because he was relying on the probate court's statement that counsel could recall Daniel to testify, so counsel "chose to wait" for a "better tactical moment." However, the probate court cautioned that Daniel's recall was subject to objection. When Peccia's counsel attempted to recall Daniel, respondents' counsel in fact objected. The court asked for an offer of proof, took a break to review the transcript, heard further argument from both parties, and only then sustained the objection. "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion." (*People v. Clark* (2011) 52 Cal.4th 856, 932.) We do so here.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

LAVIN, Acting P. J.

EGERTON, J.